**John Wilburn KELLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63869.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Don Ervin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Joan Fisher and Gene Nettles, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

Appellant was convicted of aggravated robbery. Punishment, enhanced by a prior felony conviction, was assessed at thirty years. The sufficiency of the evidence is not challenged.

In appellant's second ground of error, he argues that the trial court erred in refusing to grant a mistrial after the arresting officer testified concerning needle marks on appellant's arms. On direct examination, Officer G.A. Jensen of the Galena Park Police Department testified that he stopped

appellant's vehicle at 2:27 a.m. on September 1, 1978. On cross-examination, appellant's counsel elicited the fact that the officer initially stopped appellant for driving while intoxicated. On redirect, the prosecutor elicited testimony that the officer thought appellant was under the influence of drugs:

"Q. All right, at the time that you pulled him over, did you determine whether or not there was any alcohol on his breath?

"A. Yes, sir, I could smell no alcohol.

"Q. Did you have an opinion as to whether or not—what he was under the influence of at that time?

"A. I thought he was under the influence of drugs.

"Q. All right. Was there anything else that led you to believe that he was under the influence of drugs?

"A. Yes, sir, his pupils were dilated, his eyes were red, he had slurred speech and he staggered when he walked.

"Q. Anything else that led you to believe he might have been under the influence of drugs?

"A. That's all.

"Q. Anything else down at the station that led you to believe that?

"A. That's all, sir.

"Q. Okay. Would you point out to the members of the jury for the purposes of the record the man that you arrested that night?

"A. Yes, sir, the defendant there in the yellow flowered shirt.

"Q. Okay. Did you have occasion to observe his person down at the Galena Park police station?

"A. Yes, sir.

"Q. Anything unusual about his arms?

"A. He had needle marks on them."

Appellant promptly objected that the officer was attempting to bring in an extraneous offense. The trial judge instructed the jury to disregard the testimony but denied appellant's motion for a mistrial.

It is a general rule of evidence that extraneous transactions or prior specific acts of misconduct committed by a party are irrelevant to the contested material issues in the case on trial and therefore inadmissible. Introduction of an extraneous offense is inherently prejudicial because (1) the accused is entitled to be tried on the accusation made in the State's charging instrument which specifies the "material issues" of the case and cannot—consistent with the rudiments of due process—be tried for some collateral crime of which he has no notice, *Jones v. State*, 568 S.W.2d 847 (Tex.Cr.App.1978); *Walls v. State*, 548 S.W.2d 38 (Tex.Cr.App.1977); *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953); and (2) an accused's propensity to commit crimes is not an issue which is material to whether he is guilty of the specific conduct charged by the State, *Collazo v. State*, 623 S.W.2d 647 (Tex.Cr. App.1981); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). Although there are exceptions to the general rule, the instant case does not fit under one of those exceptions. Thus, it was error for the officer to testify regarding the needle marks.

An error in the admission of improper testimony is cured by the trial court's instruction to the jury to disregard, except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Davis v. State*, 642 S.W.2d 510 (Tex.Cr.App.1982); *Campos v. State*, 589 S.W.2d 424 (Tex.Cr.App. 1979). It is in this regard that *Powell v. State*, 478 S.W.2d 95 (Tex.Cr.App.1972), may be distinguished from the instant case. In *Powell*, the trial court overruled the defendant's objection. We find that the trial court's action in instructing the jury to disregard the testimony cured any error concerning needle marks on appellant's arm. The ground of error is overruled.

In appellant's first ground of error, he complains that the trial court erred in

overruling his motion to suppress. Appellant contends the court erred in failing to suppress the sawed off shotgun which he contends was found as a result of an illegal search and seizure incident to an illegal arrest. Officer Jensen testified that on September 1, 1978, he was on patrol when he saw the appellant's vehicle weaving across the center of the roadway. The officer stopped the car and asked appellant, who was driving, to step out of the vehicle. As appellant exited the vehicle, Officer Jensen noticed that appellant's pupils were dilated, his eyes were red and his speech was slurred. In addition, appellant walked very unsteadily. Jensen testified he thought that appellant was intoxicated. Additionally, Jensen testified that, as appellant exited the vehicle, Jensen saw a .45 Colt automatic pistol on the floorboard of the passenger side of the car. Jensen arrested appellant for suspicion of driving under the influence of drugs and for possession of a prohibited weapon. He arrested appellant's passenger for possession of a prohibited weapon. After appellant and his passenger were placed in the patrol car and a wrecker was called, Officer Jensen conducted an inventory of the car and found the sawed off shotgun in the locked trunk of the car.

Clearly, Jensen had probable cause to arrest appellant for driving while under the influence of drugs. Article 6701d, Sections 50 and 153, V.A.C.S. Thus, we now turn to the legality of the inventory which resulted in the seizure of the sawed off shotgun from the trunk.

■ In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), it was held that inventories conducted pursuant to standard police procedures are reasonable. The purpose of an inventory is to protect the owner's property while it remains in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police from potential dangers. South Dakota v. Opperman, supra.

Further, in *Opperman*, the Court found no need to consider the existence of less intrusive means of protecting the police and the property in their custody—such as locking the car or impounding it in safe storage under guard.

■ Officer Jensen testified that it was standard procedure to inventory the contents of a vehicle when the vehicle is turned over to a wrecker. He further stated that he inventoried the contents of the passenger compartment and the trunk after appellant gave him the keys to the trunk. We find that under the circumstances of this case the officer properly conducted the inventory.

This case can be distinguished from *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1980), wherein we held that the *forcible* entry into a locked trunk during an inventory was an unlawful intrusion under both the State and Federal Constitutions. In *Gill*, the police employed the aid of a wrecker driver to remove the back seat of a vehicle in order to gain access to the vehicle's trunk. Had they not forced their way into the trunk, the police in *Gill* would have had no means of access and thereby would have been free from any claims of tampering with appellant's property which was located in the trunk of the car. In the instant case, there was no forced entry. Jensen obtained the keys to the trunk from the appellant. As a means of protection against possible future claims of theft of property by the police from the trunk, Jensen properly conducted an inventory of the trunk of the car. The sawed-off shotgun was properly seized. Therefore, the trial court did not err in overruling appellant's motion to suppress. See *Martinez v. State*, 644 S.W.2d 104 (Tex.App.-San Antonio, 1982). Appellant's first ground of error is overruled.

Appellant has filed two pro se briefs on appeal. Although appellant is not entitled to hybrid representation, we have reviewed his briefs and find no reversible error. The judgment is affirmed.

TEAGUE, Judge, dissenting.

After making the following correct holding, "it was error for the officer to testify

regarding the needle marks," the majority opinion thereafter makes the following incorrect holding: "We find that the trial court's action in instructing the jury to disregard the testimony cured the error concerning needle marks on appellant's arm."

Ordinarily, I would not take issue with the latter holding. However, almost 12 years ago, in a case from Travis County, this Court in *Powell v. State*, 478 S.W.2d 95 (Tex.Cr.App.1972), reversed the defendant's conviction because the prosecuting attorney injected into the case over objection inadmissible evidence in the form of an extraneous offense. That testimony originated "at the Austin Police Department" and concerned a police officer looking at the defendant's arms and observing needle marks thereon. This Court held, prior to reversing the defendant's conviction: "The chain of inferences is too long and contains too many gaps to allow the introduction of evidence of needle marks alone to show possible motive for theft. The prejudicial effect of such evidence far outweighs any probative value it might have. To admit such testimony without showing some affirmative link between the theft [of two lawnmowers which the defendant was on trial for stealing] and narcotics would show only that the accused is 'a criminal generally.' This, the general rule heretofore quoted prohibits." (98).

What occurred in this cause is, if not identical to what occurred in *Powell v. State*, at least a mirror image. The holding in *Powell* was recently reaffirmed by this Court in *Jordan v. State*, 646 S.W.2d 946 (Tex.Cr.App.1983). I believe that most prosecutors, as well as most defense attorneys and trial judges, are either fully aware or should be fully aware of what this Court held in *Powell v. State*, supra.

Although I acknowledge that in *Powell v. State*, supra, the objection was overruled, whereas here it was sustained, nevertheless, where a rule of law which prohibits the asking of such a question as was asked here is either known or should have been known to the questioner, and

has been on the books as long as the one applicable to this cause has been on the books, I am unable to put much stock in whether the objection was sustained or overruled, or whether the trial court instructed the jury to disregard the question and answer. The question for the reviewing court in that instance is whether asking such a question and obtaining an answer is sufficient, standing alone, to constitute reversible error.

Ordinarily, the mere asking of a question by a prosecuting attorney is not reason to reverse a conviction. However, an exception exists: "If the question, as so framed, of and within itself, implies the defendant's guilt of the misconduct inquired about and amounts, therefore, to proof of a fact, by necessary implication damaging and hurtful to the defendant, that the State was not authorized to prove," the mere asking of the question may amount to reversible error." *Mounts v. State*, 148 Tex.Cr.R. 149, 185 S.W.2d 731, 734 (1945).

The prosecuting attorney in this instance either knew or should have known not to have asked the question and Officer Jensen either knew or should have known not to have answered the question. See *Richardson v. State*, 379 S.W.2d 913 (Tex.Cr.App. 1964). Of course, the trial judge, when the question was asked, should have intervened and sua sponte struck the question from the record.

In light of *Powell v. State*, supra, the error that resulted because of the asking and answering the question was incurable error, and appellant's conviction should be reversed because of the error.

I observe another reversible error to have been committed in this cause. The majority has correctly stated in the first part of its opinion the general rule that evidence or testimony that implicates an extraneous offense is inadmissible. However, it fails to apply the rule to the admission into evidence of the sawed-off shotgun that was seized from the trunk of appellant's vehicle. For the reasons stated by Judge Campbell in *Wallace v. State*, (Tex. Cr.App.1984) (Pending on Rehearing), as

well as the reasons stated in *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981), the sawed-off shotgun was inadmissible evidence at appellant's trial.

For both of the above reasons, appellant's conviction should be reversed and not affirmed. To the majority affirming appellant's conviction, I respectfully dissent.

MILLER, Judge, dissenting.

Under the guise of limiting *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1980), to its (rather unique) facts the majority today, in two cases,[1] as a practical matter overrules *Gill*. Because the reasons given in justification may not ring quite true to the careful reader, a closer analysis is necessary to see if this is in fact a decision motivated by stare decisis or if it is but a harbinger of things to come—a decision motivated by personal philosophy.

"Stare decisis .... To abide by, or adhere to, decided cases.

"... Doctrine that, when court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle, and apply it to all future cases, where facts are substantially the same; regardless of whether the parties and property are the same."[2]

In sanctioning the inventory search in the case at bar the majority relies entirely on one factual difference between this case and *Gill:* the fact that the police did not have possession of the keys to the locked trunk of Gill's car but did have possession of the keys to appellant's locked automobile trunk in this case. So the question for closer analysis is whether this fact *is* significant in *Gill* or other inventory search cases.

A proper discussion of the inventory search doctrine must begin with the case that gave it national scope, *South Dakota v. Opperman*, 428 U.S. 364, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976). Chief Justice Burger began the plurality opinion's analy-

sis by quoting the late Justice Black's final pronouncement on the Fourth Amendment:

" '[T]he Fourth Amendment ... prohibits only *unreasonable* searches and seizures. The relevant test *is* ... the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts.' *Coolidge v. New Hampshire*, 403 U.S. [443] at 509–510 [91 S.Ct. 2022 at 2059–2060, 29 L.Ed.2d 564, (1971) (emphasis in opinion)]." *Id.*, 428 U.S. at 372.

The opinion continued on with a discussion of the reasonableness of warrantless entry into automobiles (that were legitimately in police possession) and, germane to the case before the Court, how a "protective" search of such an automobile would be reasonable as long as it was conducted pursuant to standard police procedures so that the intrusion would be limited in scope to the extent *necessary* to carry out the "caretaking" function. *Id.*, 428 U.S. at 375, 96 S.Ct. at 3100. After noting the reasonableness of inventorying an *unlocked* glove compartment, (*Id.*, 428 U.S. at 376, n. 10, 96 S.Ct. at 3100, n. 10) the Chief Justice pronounced that such "inventory" searches as this were not unreasonable under the Fourth Amendment.

Joining this four judge plurality was Justice Powell who wrote that although he joined their opinion he had some additional views, among them:

"Although the expectation of privacy in an automobile is significantly less than the traditional expectation of privacy associated with the home, [citations omitted], the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances." *Id.*, 428 U.S. at 380, 96 S.Ct. at 3102.

Noting that the search was limited to an inventory conducted strictly in accord with regulations of the police department, and noting in footnote that the trunk was not

---

1. See also *Stephen v. State*, 677 S.W.2d 42 (Tex.Cr.App. delivered this day).

2. Black's Law Dictionary, 1261 (5th ed. 1979).

searched *because it was locked,* Justice Powell then went on to embrace routine inventory searches.

It can readily be seen then that the Supreme Court specifically did not sanction the inventory search of a locked automobile trunk in *Opperman.* Nor have they since. The Supreme Court has basically left the doctrine alone, resisting expansion in this area though clearly not hesitant to expand the power of police to conduct warrantless searches of cars and containers when they have *probable cause* to believe contraband is contained therein, *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); or to conduct warrantless searches of automobile passenger and glove compartments and any containers therein incident to a lawful arrest, *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In fact, in *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), the Court even pointed out that the automobile glove compartment that was validly inventoried was *unlocked.*

Thus it is clear that the Supreme Court to this day has decreed that: (1) there are limits to the scope of inventory searches of automobiles and (2) the "limits" are reached when the caretaking function is carried out. One simply finds no support from the Court for the proposition that a locked automobile trunk falls within these limits, whether or not the police have the keys.

Now let's examine *Gill,* supra, in a very elementary fashion. We first notice that there is a panel opinion authored by Judge Roberts which is of value to explain his vote to concur in the result on rehearing en banc. Then there is a five judge majority opinion on rehearing authored by Judge Teague and joined by Presiding Judge Onion and Judges Odom, Tom Davis and Clinton and in which Judges Dally, W.C. Davis and McCormick concurred in the result, as did Judge Roberts.

After a discussion of the *Opperman* inventory search doctrine and a short soliloquy differentiating those searches from searches based on probable cause, the majority on rehearing pronounced the Texas and United States constitutional limits on automobile inventory searches.

"In short, the expression 'inventory search,' is not a talisman in whose presence the Fourth Amendment or Art. I, Sec. 9, of the Texas Constitution fades away and disappears. [citation omitted]

"... In [the] context [of an inventory search], a seizure of items found in an *unlocked trunk* of an automobile is permissible ....

"... Absent a showing of probable cause and exigent circumstances, a warrantless search of a locked automobile trunk is *per se* illegal." (emphasis supplied) *Gill,* supra at 318–319.

Now at this juncture the *Gill* majority gives an additional legal theory, unnecessary to the ultimate holding, that rests, as did the decision of the *Gill* panel opinion, on expectation of privacy in a locked trunk,

*"Additionally,* the State overlooks the differences between one's expectation of privacy in a locked trunk of an automobile and the interior of an automobile ....

"The second reason [expectation of privacy above] is *also* sufficient to outweigh the purposes of an inventory search of a locked trunk. If the locked trunk cannot be entered without the use of substantial force, it is unlikely that the police would be charged with losing or appropriating items of personal property found therein, and the possibility of theft or vandalism by other persons of the locked trunk's contents is sufficiently minimized that the prophylactic purposes of the inventory search are not sufficient to outweigh the owner's expectation of privacy in the locked trunk." (emphasis supplied) *Id.* at 319.

Thus the Majority in *Gill* held that the search of a locked trunk is not supportable for two separate and separable reasons.[3]

---

**3.** Notwithstanding the apparent emphasis on forced entry in the *Gill* majority's second, additional reason, where a key is used by police to enter a locked car trunk there can be made a

In the case at bar, the majority leaps on the second (and if you will—superfluous) reason given to support *Gill's* holding.[4] They point out that since the police had custody of appellant's keys and, being concerned about a speculative potential future accusation of theft of property from the trunk, had to search the trunk to protect themselves against this possible claim because possession of the keys deprived them of the defense that since there was no way of entering the trunk except by force and there is no evidence of force, the accusation was groundless. In any event the main and independent reason supporting Gill's holding, that the inventory search doctrine per se does not encompass a locked trunk, is conveniently ignored.

In *Gill* the majority characterized the State's argument as nothing more than "advocating that a routine lawful arrest of a suspect in an automobile authorizes a search of every nook and cranny of that automobile." *Gill,* supra at 320. Today the majority embraces that very argument and cloaks it in the imprimatur of law. Why? The reader need only truthfully answer the question: Are we that worried the police are going to have to pay lots of money because of false claims of property being stolen from locked automobile trunks in their care, or are we really just helping the police out here in their war against crime (regardless of the concepts of individual liberty involved)?[5]

For my part I cannot condone the majority's holding and certainly cannot reconcile it with Gill.[6]

Contrary to what was specifically pronounced in *Gill,* the expression "inventory search" *now is* a talisman in whose presence a reasonable expectation of privacy, the Fourth Amendment and Art. I, Sec. 9, of the Texas Constitution all fade away and disappear.

> "Law—our highest ideal and our basest nature. Don't look too closely at the law. Do, and you'll find the rationalized interpretations, the legal casuistry, the precedents of convenience."[7]

I dissent.

CLINTON, J., joins.

---

strong argument against use of the inventory search doctrine to justify this police conduct. The sounder approach was epitomized by the case of *United States v. Wilson,* 636 F.2d 1161 (8th Cir.1980), wherein the 8th Circuit said that a legitimate seizure of an automobile does not automatically justify an unlimited inventory search of the automobile, nor entry via key into a locked automobile trunk:

> "Although an individual may not reasonably expect the same degree of privacy in a car trunk as in a home or office, an individual may justifiably have a greater expectation of privacy in the locked trunk than in the interior of his car.
>
> \* \* \* \* \* \*
>
> "We hold, therefore, that the needs of the government in conducting an inventory search may be ordinarily accomplished without the serious intrusion into the locked trunk of an automobile." *Id.* at 1164.

4. *Stephen,* referred to in footnote 1, involves an identical justification, but cites the split panel decision of *Williams v. State,* 621 S.W.2d 613,

615 (Tex.Cr.App.1981) no reh., as authority. *Williams,* aside from the fact that the concept of inventory of a locked automobile trunk was not *discussed,* was a case where the police thought the car in question was stolen and not the property of the defendant driver.

5. Imagine the possibilities of combining today's majority holding with the Inevitable Discovery Doctrine, for instance.

6. Nor would the Dallas Court of Appeals be able to. See *Osban v. State,* 648 S.W.2d 790, 790–791 (Civ.App.—Dallas 1983) *pet. ref'd,* wherein the court wrote: "In making the inventory search Officer Dean took the key from the ignition, opened the locked trunk, and there found .... We hold that the inventory search of the locked trunk was an unlawful search." [citing *Gill* ] (emphasis in original).

7. Muad'dib speaking to his royal concubine Chani; F. Herbert, Dune Messiah, p. 212 (book two in the Dune Chronicles 1975).