Jerry Paul EASTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–93–076–CR.

Court of Appeals of Texas,
Waco.

Dec. 29, 1993.

W.V. Dunnam, Jr., Dunnam & Dunnam, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., Crawford Long, Beth Toben, Enid A. Wade, Asst. Dist. Attys., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Jerry Paul Easter was convicted by a jury of aggravated sexual assault and assessed twenty years in prison and a $10,000 fine. *See* TEX.PENAL CODE ANN. § 22.021(a)(1)(B) (Vernon 1989). The victim of Easter's assault was his then eleven-year-old step-daughter. He appeals on nineteen points. We will affirm the judgment.

Stan and Cecelia Turner were married in 1971 and had four children before they divorced in October 1984. Cecelia married Easter in January 1985. She and the chil-

dren lived with Easter until November of 1985, when Cecelia and the three youngest children moved to Oregon.[1] Cecelia returned with the children approximately nine months later. She and Easter divorced in the spring of 1987. Allegations arose during this time period that Easter had sexually abused A.T., the youngest daughter—the same child Easter stands accused of assaulting in this case. Easter and Cecelia remarried in September 1988 and were still married at the time of trial.

The State presented evidence that on or about October 12, 1990, Easter went into the victim's room, fondled her breasts, put his mouth on her breasts, and inserted his finger and his tongue into her vagina. On October 13, Stan Turner removed the victim and her brother from Easter's home and took them to his home in Houston after learning that Easter had hidden a video camera in the bathroom and had made and kept a videotape showing the victim nude, entering and exiting the shower.

The defense attempted to prove that Turner had been abusive to Cecelia during their marriage, that he still "wanted" Cecelia, and that he would use any means necessary to get her back. The defense also attempted to prove that the victim so feared her father that she had fabricated the accusations against Easter.

 In his first point, Easter complains that the court erred in denying his motion for mistrial regarding the State's questioning of a defense witness. The defense called Shirley Farnsworth, who testified that she attended the same church that Turner and Cecelia had attended during their marriage and that Easter and Cecelia presently attend. Farnsworth testified that she had observed bruises on Cecelia during her marriage to Turner and that Turner had admitted to her that he had hit Cecelia. She testified that the children were fearful of Turner and that Turner was manipulative.

On cross-examination, the State asked:

[STATE]: All right. Now, you're a member of the same church that they were members of?

[FARNSWORTH]: Yes.

[STATE]: And Mr. Easter was kicked out of the church, wasn't he?

[DEFENSE COUNSEL]: If the Court please, we would like to go into the Court's office.

Out of the jury's presence, Easter moved for a mistrial on the grounds that the question— "Mr. Easter was kicked out of the church, wasn't he?"—was "totally irrelevant, constitutes a hearsay accusation and a hearsay conviction by somebody, and a hearsay conclusion by somebody. And its prejudicial effect—its probative weight is substantially and far outweighed by its prejudicial effect." Easter also objected that the question violated the First Amendment and the due process clause of the Constitution. The prosecutor argued that the question was proper to determine if Farnsworth had personal knowledge of whether Easter had admitted to the congregation that he had molested the child.[2] The court denied Easter's motion for a mistrial and instructed the jury to disregard the prosecutor's question.

On appeal, Easter complains that the question was an attack on his character, an injection of a hearsay opinion of his character, not relevant, and highly prejudicial. He argues that there could be no greater condemnation of a man's character than ejection from his church. "Relevant evidence" is that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Crim.Evid. 401. Evidence

---

1. The oldest child went to live with his father, Stan Turner. Sometime later, the oldest daughter left to live with her father.

2. Whether Easter actually had been kicked out of the church cannot be determined from the record. Cecelia testified later that she and Easter still attend the same church and had seen Farnsworth there the Sunday before trial.

**934** ■■■■■■■■■■■■■■■■■

that is irrelevant is inadmissible. *Id.* 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* 403.

■■■ Generally, the "error in asking an improper question 'may be cured or rendered harmless by its withdrawal or an instruction to disregard.'" *Huffman v. State,* 746 S.W.2d 212, 218 (Tex.Crim.App.1988) (quoting *Carter v. State,* 614 S.W.2d 821, 824 (Tex.Crim.App.1981)). The exception occurs in extreme cases where the question is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced. *Id.*

The jury could have construed the question two ways: first, the church had kicked Easter out for the alleged acts or, second, the church had kicked him out because of other extraneous acts which were not before the jury. The court, in sustaining the objection to the question, determined that the question was improper. The question before us then is whether the jury was so affected by the question that they were unable to disregard it in their deliberations as instructed. In light of all the evidence that was heard, we believe that the asking of this single, unanswered question did not so affect the jury. *See id.* We overrule point one.

■■■ Easter's second point complains that the court erred in denying his motion for mistrial after the prosecutor asked Turner whether anyone had offered him money to drop the charges. During cross-examination of Turner, Easter repeatedly asked questions implying that Turner had spoken with lawyers about "get[ting] some money out of this." Easter insinuated that Turner's motive was to profit by filing suit for civil damages. Immediately following Easter's questions, the State asked on redirect:

[STATE]: Mr. Turner, has anybody offered you any money to drop this case, to drop these charges?

[TURNER]: Yes.

[DEFENSE COUNSEL]: Now, if the Court please, we would like to go in the Court's chambers.

In chambers, Easter moved for a mistrial on the grounds that there was no proof that Easter himself had directed anyone to contact Turner about dropping the charges. The prosecutor responded that, because the defense had repeatedly implied that Turner's motive was money, it should be allowed to ask the question. Outside the jury's presence, Turner testified that Cecelia had approached him twice offering money to "make it go away" and that the Bishop of Cecelia's and Easter's church had called, urging him to settle the matter "for a combination of probation and money." The court did not allow Turner to testify to these offers before the jury and denied Easter's motion for mistrial. The court instructed the jury to disregard the answer.

The State argues on appeal that Easter invited the testimony by his attacks on Turner. The court determined that the evidence was inadmissible. An error in the admission of improper testimony is cured by the court's instruction to the jury to disregard, except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Kelley v. State,* 677 S.W.2d 34, 36 (Tex.Crim.App.1984). We do not believe the jury was so affected by this question and answer. *See id.* We overrule point two.

■■■ In point three, Easter complains of the court's permitting the victim to testify that he had disciplined her by striking her with a ping pong paddle. A.T. testified:

[STATE]: Okay. Did he ever spank you, or what did he do to discipline you?

[DEFENSE COUNSEL]: We object to that, upon the same ground, it's not relevant. It's an attempt to show an act of the Defendant, apart from what he is charged with, against this third party. And its probative value is substantially outweighed

by any—by the danger of unfair prejudice, in violation of Rule 404, the Rules of Criminal Evidence.

[COURT]: All right, sir. Overruled.

[STATE]: You can go ahead.

[A.T.]: He took the ping pong paddles with the ball and string attached to it, and he took the ball off and he would hit us with the paddle. And I can recall once, he hit me so hard with the paddle that it broke on me.

[DEFENSE COUNSEL]: If the Court please, we object to this and move the Court to instruct the jury not to consider—

[COURT]: I sustain the objection and instruct the jury to disregard the last statement.

Again, the court sustained Easter's motion to strike the offending testimony and instructed the jury to disregard it. Thus, the question presented is whether the instruction was sufficient to withdraw the impression produced on the minds of the jurors. *See id.* We hold that it was sufficient and overrule point three.

■ Next, Easter complains that the court erred in denying his motion for mistrial after the prosecutor stated during opening argument:

> Then [the victim] is going to tell you how on the night after her birthday, which is on October 11th of 1990—so this would be the night of October 12th—the last night that she stayed in the home with the Defendant and her mother, the Defendant came into her room in the middle of the night, uncovered her, and *continued* to fondle and touch and penetrate her, and she will describe how he did that.

(Emphasis added). After Easter moved for a mistrial on the grounds that the use of the word "continued" was so prejudicial that it could not be cured, the court instructed the jury to disregard the word "continued" for any purpose.

On appeal, Easter asserts that the prosecutor's use of the word "continued" was a "flagrant error" and that, because of the court's failure to grant a mistrial, the State will be able to commit such error again with impunity, citing *Harris v. State,* 790 S.W.2d 568, 586–87 (Tex.Crim.App.1989). An improper statement can be cured by the court's instruction to the jury to disregard, except in extreme cases where it appears that the statement was clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *See Kemp v. State,* 846 S.W.2d 289, 308 (Tex. Crim.App.1992). The test, then, is whether the prosecutor's statement was of that character. *See id.* We do not believe the isolated use of the word "continued" in this context was so extreme. *See id.* We overrule point four.

■ In point five, Easter complains that the court erred in permitting the prosecutor to state, over objection, that the victim had made allegations of sexual abuse prior to the family's seeking counselling with Dr. Wise. After Cecelia testified for the defense, the prosecutor asked, "Wasn't it true that the reason the counselling started was because [A.T.] made allegations that he had sexually abused her and that the family was trying to reunite after that allegation?" Easter objected that the question injected hearsay in violation of article 38.072 of the Code of Criminal Procedure. On appeal, he cites *Long v. State,* 800 S.W.2d 545 (Tex.Crim. App.1990).

■ Defense counsel had previously questioned A.T. about her visits with Dr. Wise in 1987, questioning her from the doctor's notes about her fear of Turner. On direct examination, Cecelia testified that Turner habitually lied and that A.T. was often untruthful, would try to "finagle" around people, and that she was "subject to believing and adopting whatever [was] suggested to her." At the time Cecelia testified on cross-examination, the State had a right to show why the family sought counselling with Dr. Wise. Article 38.072 of the Code of Criminal Procedure "applies only to statements that de-

scribe the alleged offense." TEX.CODE CRIM. PROC.ANN. art. 38.072, § 2(a) (Vernon Supp. 1993). The State's question did not call for an answer "describ[ing] the alleged offense." *See id.* By definition, article 38.072 does not apply to the State's question. However, Easter also asserted a hearsay objection. Hearsay is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM. EVID. 801(d). Here, Cecelia was asked about the reason they sought counselling, not about the truth of the allegations of abuse. Additionally, evidence of the extraneous offenses described later had already been admitted into evidence. We overrule point five.

■ Easter's sixth point complains that the court erred in allowing the State to prove, over his objection, prior extraneous acts of sexual abuse of the victim. A.T. testified about the events on the night in question. Easter cross-examined her about that night, implying that her identification of him as the perpetrator was questionable because she was "half asleep," the room was dark, and her brother's room was nearby. He questioned her about (1) whether she hated her father, Stan Turner, (2) letters she had written to her father,[3] (3) information in notes from Dr. Wise, (4) whether she feared Turner because he had allegedly beaten her older sister, and (5) whether she feared Turner because he yelled at her, treated her badly, and cursed in her presence.

Easter also cross-examined Turner, implying that he wanted Cecelia back and that he would go to any means necessary to get her back or to get the children away from her. He asked Turner whether A.T. was "scared to death" of him and whether A.T. wrote letters to him, complaining about his always asking her questions and indicating that she was afraid of him. Easter asked Turner if he had once told fellow church member Shirley Farnsworth that, sooner or later, he would manage to get the kids away from Cecelia and Easter. Turner admitted that

he had told Farnsworth, when he had temporary custody of the children in 1986, that he was going to keep the children if at all possible.

On redirect of Turner, the State indicated that it wanted to introduce extraneous offenses between Easter and A.T., arguing that they were admissible to prove identity, to disprove the defensive theory that A.T. had lied because she feared Turner, to explain the allegations made on cross-examination that she was afraid of Turner because he was always asking her questions about Easter, to rebut the implications made by defense counsel from the statements in A.T.'s letters, and to explain Turner's admission that he wanted to keep the children away from Cecelia and Easter. Easter argued that the extraneous offenses were not relevant, and if relevant, their probative value was substantially outweighed by danger of unfair prejudice. The court overruled the objection.

■ When the State attempts to adduce evidence of "other crimes, wrongs, or acts," the defendant must object in a timely fashion to preserve his complaint for appeal. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (on rehearing). After objection, the State must satisfy the court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character to show that he acted in conformity therewith. TEX.R.CRIM.EVID. 404(b). If the court determines that the evidence has no relevancy apart from character conformity, then it is inadmissible. *Montgomery*, 810 S.W.2d at 387.

■ The state may, however, persuade the court that the evidence has relevance apart from character conformity, *i.e.*, that an "other purpose" such as those set forth in Rule 404(b) will be served by admission of the evidence. *Id.* at 387–88; TEX. R.CRIM.EVID. 401, 404(b). The relevance may be that the evidence tends to establish some elemental fact, such as identity or intent; that it tends to establish some eviden-

---

3. A.T. denied writing the letters.

tiary facts, such as motive, opportunity, or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory. *Montgomery,* 810 S.W.2d at 387–88. The state may also persuade the court that it is relevant upon a logical inference not anticipated by the rulemakers. *Id.* at 388. Should the court admit the evidence, it should, upon a timely request, instruct the jury that the evidence is limited to whatever purpose the state has persuaded the court it serves. *Id.*

▉▉▉ Upon further objection that the relevancy of an extraneous offense is substantially outweighed by any of the factors listed in Rule 403, usually unfair prejudice, the court *must* engage in the balancing process. *Id.* at 389; TEX.R.CRIM.EVID. 403. Factors that may be used in the balancing process include (1) the inherent probative value of the evidence, (2) the similarity of the conduct to the offense on trial, (3) the strength of the evidence of the extraneous conduct, (4) the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways, (5) the trial time necessary to develop the evidence, giving consideration to whether the jury's attention will be diverted from the offense on trial, and (6) the State's "need" for the evidence including (a) the availability of other evidence which tends to accomplish the same "other purpose," (b) the strength of the other evidence, and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute. *Montgomery,* 810 S.W.2d at 389–90. Because of the presumption that probativeness outweighs prejudice, a defendant bears the burden of demonstrating how the negative attributes of the evidence substantially outweigh its probative value. *Id.*

Easter cites two recent cases from the Fort Worth Court of Appeals, each holding a victim's testimony about extraneous offenses inadmissible. *See Jessup v. State,* 853 S.W.2d 141 (Tex.App.—Fort Worth 1993, pet. filed); *Hill v. State,* 852 S.W.2d 769 (Tex.

App.—Fort Worth 1993, pet. ref'd). In *Jessup,* the court stated that when one accused of sexually assaulting a child challenges the credibility of the complainant, proof of similar acts *may* be admissible if the evidence *logically* serves that purpose. *Jessup,* 853 S.W.2d at 143. However, the court found that the testimony of the child-victim as to extraneous acts does not rebut a challenge to her credibility because it is vulnerable to the same challenge—that is, the child could also be lying about the extraneous offenses.[4] *Id.* On the other hand, testimony of an independent witness to the extraneous offense, testimony of immediate outcry, or expert testimony about observable evidence of the extraneous offense would logically rebut a challenge to the victim's credibility. *Id.*

We note that the Fort Worth court has recently decided *Self v. State,* 860 S.W.2d 261 (Tex.App.—Fort Worth 1993, pet. ref'd), in which the court overruled a challenge to the victim's testimony about prior sexual abuse by the defendant. The court in *Self* determined that, unlike in *Jessup* and *Hill,* the defendant had attacked the child's credibility indirectly by theorizing that the child's aunt and grandmother had contrived the allegations and coaxed the child into telling the story. *Id.* 860 S.W.2d at 263. Because the child in *Self* was twelve years old and could talk about specific details of other incidents, the court found that her testimony would tend to rebut the defendant's theory. *Id.*

Turner testified that he received temporary custody of the children in 1986 after A.T. had told him that Easter had sexually abused her and that it was during this time that he told Farnsworth that he would not allow the children to go back to their mother. He explained A.T.'s letter-statements about his questions as evidencing his concern about Cecelia's remarrying Easter. Turner would ask A.T. "if any of the abuse had been re-established." After Easter re-cross-examined Turner, implying again that "over and over" and "for years and years" Turner had been trying to get A.T. to make accusations

---

**4.** *Hill* reached the same result. *Hill,* 852 S.W.2d at 770.

against him, the State sought to introduce a videotape Easter had made of A.T. in the shower "to rebut [Easter's] defensive theory that [Turner] put the child up to saying what happened" and to rebut the implication that he only sought custody of the children to "get back" at Cecelia for marrying Easter. The videotape had been found by A.T.'s older brother, Scott, who had then called Turner, who in turn confronted Easter and Cecelia and removed A.T. and her younger brother from the home. We view the videotape to be the type of evidence approved by the Fort Worth court—the tape independently showed an extraneous act and did not concern A.T.'s credibility. *See Jessup,* 853 S.W.2d at 143.

A.T. was recalled by the State and testified that Easter had sexually abused her since she was five, that he had put medicine on her vagina and "felt around" while doing so, that he had made her put medicine on his penis, that on one occasion he had made her rub his penis and that "after awhile, his sperm came out," and that he made her suck on his penis while they were in the swimming pool.

By this testimony, the State sought to prove Easter's identity as the perpetrator after his cross-examination implied that A.T. could have been mistaken because she had testified that it was dark and she was "half-asleep" during the assault. Easter cites the recent case of *Bishop v. State,* 869 S.W.2d 342 (Tex.Crim.App.1993), as being "on all fours" with the question presented here. *Bishop* holds that in a prosecution for sexual assault, admission of an ex-wife's testimony about the defendant's sexual practices and capabilities was error—not because it was not relevant but because the prejudicial effect substantially outweighed the probative value. Extraneous acts against third parties offered for the purpose of showing identity "must be so similar to the offense charged that the accused's acts are marked as his handiwork, that is, his 'signature' must be apparent from a comparison of circumstances in both cases." *Bishop,* 869 S.W.2d at 346. Otherwise, the prejudicial effect of the evidence would substantially outweigh any probative value it might have. *Id.* at 346.

The facts in the instant case are more like those in *Self. See Self,* 860 S.W.2d at 263. Easter's defense was that A.T. was deathly afraid of Turner, that Turner was manipulative, and that he would do anything to keep the children from Cecelia and Easter. Throughout the trial, Easter's questioning implied that Turner had influenced A.T.'s making the accusation. He also challenged A.T.'s credibility when he cross-examined her. Thus, Easter attacked A.T.'s credibility, directly and indirectly, and evidence of extraneous acts of misconduct against her was relevant to prove identity and to rebut defensive theories. *See Montgomery,* 810 S.W.2d at 387–88; TEX.R.CRIM.EVID. 401, 404(b). We do not find that Easter discharged his burden of showing that the negative attributes of the evidence outweighed its probative value. *See Montgomery,* 810 S.W.2d at 389–90; TEX.R.CRIM.EVID. 403. We overrule point six.

■ In point seven, Easter complains that the court erred in excluding Cecelia's testimony that, during her marriage to him, Turner would buy Playboy magazines and masturbate in front of her. Easter argues that this testimony was relevant because Turner had testified that, when he confronted Easter and Cecelia with the videotape of the victim, Easter had admitted that he masturbated to the videotape. After Cecelia denied that Easter made the statement, he offered her testimony to show Turner's "abnormal sexual proclivities." The court sustained the State's objection and instructed the jury to disregard the question. Easter perfected a bill of exception, arguing that the testimony was relevant to show why Turner would have testified as he did.

■ The determination of the admissibility of evidence is within the discretion of the court. TEX.R.CRIM.EVID. 104; *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App. [Panel Op.] 1979). Error does not occur unless the court abuses that discretion. *Werner v. State,* 711 S.W.2d 639, 643 (Tex. Crim.App.1986). The determination of whether evidence is relevant to any issue in

the case lies within the discretion of the court. TEX.R.CRIM.EVID. 401; *Johnson v. State,* 698 S.W.2d 154, 160 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). When the court excludes testimony offered by a criminal defendant, the burden on appeal is to show that the court abused its discretion in excluding the evidence. *Johnson,* 698 S.W.2d at 160. We hold that the court did not abuse its discretion in refusing to admit evidence of Turner's unrelated acts. We overrule point seven.

■ In point eight, Easter complains that the court failed to give a requested instruction on unanimity. In point nine, he complains that the court erred in overruling his objection to the merging of counts one and two of the indictment in the charge.

The first paragraph of the indictment alleged that on or before October 12, 1990, Easter "intentionally and knowingly cause[d] the penetration of the female sexual organ of [the victim], a child younger than 14 years of age who was not the spouse of said Defendant, by the finger of the said Defendant, JERRY PAUL EASTER." The second paragraph of the indictment contained the exact language of the first paragraph, but alleged that the penetration of the victim's female sex organ had been "by the tongue" of Easter. A person commits aggravated sexual assault if he intentionally or knowingly causes the *penetration* of the female sexual organ of a child under the age of fourteen *by any means.* TEX.PENAL CODE ANN. § 22.-021(a)(1)(B)(i) (Vernon 1989).

The court's charge instructed the jury: "Our law provides that a person commits the offense of Aggravated Sexual Assault if the person intentionally or knowingly causes the *penetration* of the female sexual organ of a child under fourteen years of age *by any*

*means."* (Emphasis added). The application paragraph of the charge allowed the jury to convict Easter of aggravated sexual assault if it found that he had "intentionally or knowingly cause[d] the *penetration* of the female sexual organ of [the victim], a child younger than fourteen years of age who is not the spouse of the said defendant, *by the finger or the tongue* of the Defendant . . . as charged in the indictment." (Emphasis added).

Easter asserts that the two paragraphs in the indictment are two different counts and, therefore, must be charged separately. He asserts that the court should have instructed the jury that it must unanimously find that he penetrated the victim's female sexual organ with his finger, or that it must unanimously find that he penetrated the victim's female sexual organ with his tongue, citing *U.S. v. Holley,* 942 F.2d 916 (5th Cir.1991).[5] We disagree.

■ Each separate count in an indictment may contain as many separate paragraphs charging the same offense as necessary. TEX.CODE CRIM.PROC.ANN. art. 21.24(b) (Vernon 1989); *Aguirre v. State,* 732 S.W.2d 320, 325 (Tex.Crim.App.1987) (on rehearing). "[T]he term 'count' is used to charge the offense itself, and a 'paragraph' is a portion of a count, which charges a *method of committing the offense."* *Renfro v. State,* 827 S.W.2d 532, 535 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). An indictment may allege different methods of committing the same offense, and each of these methods may be submitted alternatively to the jury. *Id.* at 535–36. Because the relevant portions of Easter's indictment did not allege different offenses but rather alleged different ways of committing the same offense, the court properly furnished the jury with a general verdict form and refused the requested instruction.

5. In *Holley,* the defendant had been convicted of perjury under a federal statute. Holley was indicted on two counts—each count alleging several separate false statements Holley had given during depositions. Holley objected to the charge because it failed to inform the jury that it must be unanimous as to his perjury in at least one particular statement in each count in order to find him guilty on that count. *Holley,* 942 F.2d at 925. We note that the case *Holley* relied on, *U.S. v. Gipson,* 553 F.2d 453 (5th Cir.1977), was criticized by Justice Souter in *Schad v. Arizona,* —— U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

*See Aguirre,* 732 S.W.2d at 326. We overrule points eight and nine.

■ In points ten and eleven, Easter complains that the court erred in failing to submit to the jury the lesser-included offense of indecency with a child and that such failure denied him due process of law. An offense is "lesser-included" of an offense charged in an indictment if: (1) it is established by proof of the same or less than all facts required to establish the greater offense, (2) it differs from the greater offense only in the respect that proof of a less serious injury or risk of injury is sufficient to establish it, (3) it differs from the greater offense only in the respect that proof of a less culpable mental state is sufficient to establish it, or (4) it consists of an attempt to commit the greater offense. TEX.CODE CRIM. PROC.ANN. art. 37.09 (Vernon 1981).

■ In determining whether a jury must be instructed concerning a lesser-included offense, a two-step analysis must be applied. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.* at 672. Second, there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is only guilty of the lesser offense. *Id.* at 673 (clarifying the test of *Royster v. State,* 622 S.W.2d 442, 446 (Tex. Crim.App.1981)).

The only testimony regarding the October 12, 1990, assault came from the victim. She testified that on that night, Easter came to her room and pulled down the covers. She then stated:

> [VICTIM]: He moved my underwear aside with his hands and he started—he pulled up my shirt a little bit—my nightgown—and he started to feel my vagina with his hands, and he kissed me down there, and he put his tongue in my vagina. And he put his hands on my breasts and started feeling around with them, and he put his mouth on my breasts.
>
> . . .

[STATE]: When he felt down there, what was he feeling with at first?

[VICTIM]: With his hands . . . He was putting his finger in my vagina and feeling around . . . He kissed me down there, and he put his tongue in my vagina.

[STATE]: Okay. He put it up inside there?

[VICTIM]: A little.

[STATE]: Okay. Like up where he had put his finger?

[VICTIM]: Yeah.

[STATE]: Okay. What did he do after that?

[VICTIM]: He felt on my breasts.

[STATE]: Felt on them with what?

[VICTIM]: With his hands. And then he put his mouth on my breasts.

Easter emphasizes the testimony of Dr. Susan Nickel. Dr. Nickel testified that the victim's vagina was not enlarged, that the inner lips of the vagina were adhered, and that any pressure would tend to make the inner lips come apart. Easter also cites to Dr. Nickel's testimony that, while evaluating the victim in January 1991, the victim had "talked a lot about the hands, but as to whether his hands, his fingers, went into her vagina, she did not tell me about that." Easter contends that the evidence raises a fact issue on whether he penetrated her with his finger—thus raising two different interpretations and bringing the issue within *Saunders v. State,* 840 S.W.2d 390 (Tex.Crim. App.1992).

As applicable to these facts, a person commits the offense of indecency with a child if he engages in sexual contact with a child younger than seventeen who is not his spouse. *See* TEX.PENAL CODE ANN. § 21.11 (Vernon 1989). "Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. *Id.* § 21.01(2) (Vernon 1989). A person commits aggravated sexual assault, as

applicable in this case, if he intentionally or knowingly causes the penetration of the female sexual organ of a child under the age of fourteen by any means. *Id.* § 22.-021(a)(1)(B)(i). The first prong of the lesser-included offense test is satisfied because indecency with a child is within in the proof of aggravated sexual assault. *See Rousseau,* 855 S.W.2d at 672–73. However, to satisfy the second prong, there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is *only* guilty of the lesser offense. *See id.*

■■■ The victim testified that Easter penetrated her vagina on October 12, 1990. Dr. Nickel did not testify about the events on October 12. Her testimony that at some point Easter may have had sexual contact, rather than penetration, does not relate to the events of October 12. Thus, we do not believe that the evidence would permit a jury rationally to find Easter guilty only of indecency with a child. *See id.* Having determined that Easter was not entitled to an instruction on the lesser-included offense, we find that he was not denied due process. *See Cordova v. Lynaugh,* 838 F.2d 764, 767 (5th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988) (under federal standard, due process requires instruction on lesser-included non-capital offense if the jury could rationally acquit on the capital crime and convict on the non-capital crime). We overrule points ten and eleven.

■■■ In points twelve and thirteen, Easter complains of the court's limiting instruction. The court instructed the jury as follows:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed crimes, wrongs or acts other than the offense alleged against him in the indictment in this case[,] [y]ou cannot consider said

testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts, if any were committed, and even then you may only consider the same in determining identity or that it rebuts a defensive theory of the defendant, if any, in connection with the offense alleged against him in the indictment in this case, and for no other purpose.

Easter complains that the instruction is a comment on the weight of the evidence because it assumes he committed "other crimes, wrongs, or acts" and it assumes that identity and rebuttal of a defensive theory will be determined. Easter objected that the instruction violated article 38.05 of the Code of Criminal Procedure.[6]

■■■ "Other crimes, wrongs, or acts," although inadmissible to prove the character of a person to show that he acted in conformity therewith, may be admissible for other purposes. *See* TEX.R.CRIM.EVID. 404(b). "Other purposes" include, as set out in the given instruction, identity and rebuttal of a defensive theory. *See id.; Albrecht v. State,* 486 S.W.2d 97, 100–01 (Tex.Crim.App.1972). Should the court admit evidence under Rule 404(b), the judge should, upon a timely request, instruct the jury that the evidence is limited to whatever purpose the proponent has persuaded the court it serves. *Montgomery,* 810 S.W.2d at 388; TEX.R.CRIM. EVID. 105(a). We have held that evidence of extraneous acts was properly admitted. Because the court used the phrases "if any were committed" and "if any," the instruction does not constitute a comment on the weight of the evidence. Additionally, because the instruction was given to benefit the accused, it cannot be the basis of a complaint by him. *See Bell v. State,* 768 S.W.2d 790, 798 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). We find no error. We overrule points twelve and thirteen.

6. Article 38.05 concerns the court's ruling on admissibility of evidence. Article 36.14 requires the court to give a charge "not expressing any opinion as to the weight of the testimony." Be-

cause Easter complains of the court's charge, we presume his complaint is under article 36.14. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1993).

Easter complains in point fourteen that the use of the words "crimes and wrongs" instead of the word "transactions" was prejudicial. He cites *Villanueva v. State,* 768 S.W.2d 900, 902 (Tex.App.—San Antonio 1989, pet. ref'd), as being dispositive on this issue. We disagree. *Villanueva* concerned an instruction under section 31.-03(c)(1) of the Penal Code—a section that allows the prosecution to show intent with evidence that the actor has previously participated in "recent transactions" that are "similar" to the one for which he is being tried. There, the court's instruction failed to track the statutory language and thus harmed the defendant. *Id.* Here, the court used the terminology from Rule 404(b). We overrule point fourteen.

In points fifteen through eighteen, Easter complains that questions asked before the jury panel during voir dire injected the hearsay opinion of jurors. Easter cites no authority to support his position and thus fails to preserve these complaints. *See McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App.1980); *Smith v. State,* 811 S.W.2d 665, 670 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). We overrule points fifteen through eighteen.

In his final point, Easter asserts that the cumulative effect of the errors set out in his previous points rendered his trial fundamentally unfair and denied him due process of law. Having found no error, we overrule point nineteen.

We affirm the judgment.