**Stephen C. MURPHY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–98–00382–CR.**

Court of Appeals of Texas,
El Paso.

June 1, 2000.

Rehearing Overruled Aug. 16, 2000.

J.K. 'Rusty' Wall, Law Office of J.K. Rusty Wall, Midland for Appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Eric Kalenak, Asst. Dist. Atty., Midland, for State.

Before Panel No. 4, BARAJAS, C.J., LARSEN, and McCLURE, JJ.

*O P I N I O N*

ANN CRAWFORD McCLURE, Justice.

Stephen C. Murphy appeals his conviction for the offense of theft of property over $1,500. Following the jury's finding of guilt, the court assessed punishment at confinement in a state jail for two years. We affirm.

**FACTUAL SUMMARY**

In early 1993, Appellant opened a checking account at Amwest Savings [1] in Midland, Texas, under the name Midway Accounting and Business Service. On April 4, 1996, First American closed the account because it had a negative balance of $453.88 and the bank was holding another "large item." On that same date, First American wrote off the negative balance and returned the account to a zero balance. After that date, the account was never re-opened. Appellant subsequently opened a checking account with Norwest Bank in Midland on July 11, 1996. As of September 24, 1996, the Norwest account had a balance of $140.14. On that date, Appellant wrote a check for $8,700 on the closed First American account and deposited it into his Norwest account. Two days later, Appellant wrote a check for $8,500 on the Norwest account and cashed it at a Norwest bank branch in Midland.[2] As might be expected, First American returned the $8,700 check to Norwest on October 1, 1996 because it had been drawn on a closed account. Although it is unclear whether Appellant received actual notice that the First American account had been closed, the account did not have a balance of $8,700 at any time prior to its closure.

As of October 18, 1996 when Norwest generated his monthly statement, Appellant's Norwest account was overdrawn by $10,-734.57. In November of 1996, Norwest charged off the overdrawn amount as a loss.

A grand jury indicted Appellant for theft of over $1,500 pursuant to TEX.PENAL CODE ANN. § 31.03 (Vernon Supp.2000). The trial court denied Appellant's requested submission of an instruction on issuance of a bad check as a lesser-included offense, and the jury found Appellant guilty as alleged in the indictment. On appeal, Appellant challenges the constitutionality of Section 32.41(g) of the Texas Penal Code, the trial court's refusal to submit an instruction on a lesser-included offense, and the legal sufficiency of the evidence.

**CONSTITUTIONALITY OF SECTION 32.41(g)**

In Points of Error Nos. One and Two, Appellant claims that Section 32.41(g) of the Texas Penal Code, which provides that issuance of a bad check is not a lesser-included offense of theft as defined in Sections 31.03 and 31.04, violates his right to due process guaranteed by the Fourteenth Amendment and his right to due course of law as guaranteed by Article I, section 19 of the Texas Constitution, respectively. *See* TEX.PENAL CODE ANN. § 32.41(g)(Vernon Supp.2000). He cites *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) in support of both contentions. He also contends in his third point of error that the trial court erred in refusing to instruct the jury on the lesser-included offense.

We agree with the State that *Beck* does not support Appellant's argument. In *Beck*, the defendant was convicted of rob-

---

1. Amwest subsequently changed its name to First American Bank. To avoid confusion, we will refer to the bank as First American and to the account at that institution as the First American account.

2. In addition to the testimony of various bank employees identifying Appellant as the person who cashed the check, Appellant admitted to an investigator employed by the District Attorney's office that he had passed the check at Norwest.

bery-intentional murder, a capital crime, and sentenced to death. Even though felony murder is a lesser-included offense of that offense under Alabama law, the state's death penalty statute prohibited the trial judge from giving a lesser-included offense instruction. *Beck*, 447 U.S. at 627–29, 100 S.Ct. at 2384–85. Instead, the jury was required to either convict the defendant of the capital crime or acquit. *Id.* at 629–30, 100 S.Ct. at 2385–86. Before the Supreme Court, the defendant argued that the prohibition in capital cases on giving a lesser-included offense instruction violated the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment by substantially increasing error in the fact-finding process. *Id.* at 632, 100 S.Ct. at 2387. Noting that it had "never held that a defendant is entitled to a lesser-included offense instruction as a matter of due process," the Supreme Court agreed that Alabama's all or nothing choice is constitutionally impermissible in a capital case because it enhanced the risk of an unwarranted conviction. *See id.* at 637–38, 100 S.Ct. at 2389–90. Noting the significant constitutional difference between the death penalty and lesser punishments, the Supreme Court found the risk of unwarranted conviction intolerable in a capital case. *Id.* However, the Supreme Court specifically declined to decide whether the Due Process Clause would require the giving of a lesser-included offense instruction in a non-capital case. *Id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14. Stressing that it was the "all or nothing" choice found to be repugnant in *Beck*, the Supreme Court has since held that the Due Process Clause does not require that a capital defendant be given instructions on all lesser-included offenses. *See Schad v. Arizona*, 501 U.S. 624, 645, 111 S.Ct. 2491, 2504, 115 L.Ed.2d 555 (1991)(defendant charged with first-degree murder under theories of premeditated murder and felony-murder did not have due process right to instruction on robbery; fact that jury's third option to finding defendant guilty or innocent of first-degree murder was second-degree murder rather than robbery did not diminish reliability of capital murder verdict and fact that evidence would have supported second-degree murder conviction indicated that verdict of capital murder represented no impermissible choice).

No Texas court has expressly held that a lesser-included offense instruction must be given as a matter of due process under either the federal or Texas constitutions.[3] Further, the Fifth Circuit has specifically held that in a non-capital case, the failure to give an instruction on a lesser-included offense does not raise a federal constitutional issue. *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir.1985), *citing Easter v. Estelle*, 609 F.2d 756, 758 (5th Cir.1980) and *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir.), *cert. denied*, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970). Due to the significant distinction between capital and non-capital cases, and based upon the Supreme Court's limitation of *Beck* in *Schad*, we are persuaded that the Fifth Circuit has correctly decided this issue. Accordingly, we hold that the Due Process Clause does not require instructions on lesser-included offenses. The Due Course of Law provision found in Article I, section 19 of the Texas

3. In two non-capital cases, the Waco Court of Appeals has been presented with an argument that the defendant's right to due process was violated by the trial court's failure to instruct the jury on a lesser-included offense. *See Easter v. State*, 867 S.W.2d 929, 941 (Tex.App.—Waco 1993, pet. ref'd); *Mackey v. State*, 811 S.W.2d 643, 645–46 (Tex.App.—Waco 1991, pet. ref'd). The Court of Appeals did not consider in either case the question left open by the Supreme Court, that is, whether *Beck*'s rule should be extended to non-capital cases. Instead, citing *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988), a capital case which applied *Beck*, the Court of Appeals found that no due process violation occurred since the defendants were not legally entitled to a lesser-included offense instruction under the evidence. *See Easter*, 867 S.W.2d at 941; *Mackey*, 811 S.W.2d at 645–46.

Constitution does not afford a defendant with more protection or greater rights than the United States Constitution. *See State v. Terrazas,* 970 S.W.2d 157, 160 (Tex.App.—El Paso 1998), *aff'd,* 4 S.W.3d 720 (Tex.Crim.App.1999); *Safari v. State,* 961 S.W.2d 437, 441–42 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd, untimely filed). Accordingly, Section 32.41(g) does not violate either of these provisions, and therefore, the trial court did not err in refusing Appellant's requested instruction. Points of Error Nos. One, Two, and Three are overruled.

## SUFFICIENCY OF THE EVIDENCE

 In Point of Error No. Four, Appellant asserts that the evidence is legally insufficient to prove the allegation in the indictment that the owner of the property is "Kim Kitchens, teller # 54 at Norwest Bank of Midland, Texas." In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843. Further, the standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 158; *Chesnut v. State,* 959

S.W.2d 308, 311 (Tex.App.—El Paso 1997, no pet.).

 Kim Kitchens was employed as a teller at Norwest Bank in Midland in September of 1996. She identified State's Exhibit No. 4 as the check she cashed for Appellant while working as a teller for Norwest on September 26, 1996. Although Kitchens did not specifically identify herself as teller number ·54, a stamp bearing "Teller 54" is imprinted on the face of the check, indicating that Teller 54 cashed the check. Taken in the light most favorable to the verdict, a rational trier of fact could have concluded that Kitchens is Teller 54. Point of Error No. Four is overruled. Having overruled each point of error, the judgment of the trial court is affirmed.