COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-419-CR

 

 

VASSA HYMAN A/K/A                                                         APPELLANT

HYMAN VASSA

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. Introduction








In three issues, Appellant Vassa Hyman a/k/a
Hyman Vassa appeals his conviction for possession of more than four ounces but
less than five pounds of marijuana.[2]  We affirm.

II. Factual and Procedural History

The testimony at the suppression hearing and at
trial was essentially the same.  Hyman
testified that he borrowed a white Ford Taurus around 6 p.m. on November 19,
2006, and that the car ran out of gas on Bowen Road.[3]  Hyman got out of the car and turned on his
hazard lights.  Another motorist stopped
to assist him and drove him to Wal-Mart, where Hyman purchased a gas can.
Another Good Samaritan helped him with the gas and gave him a ride back to the
car.








Around 7:15 p.m., Dalworthington Gardens police
officer Michael Thompson, who was on patrol in the area, observed the white
Ford Taurus stopped in the outside lane of traffic on Bowen Road, with its
hazard lights turned on and its headlights turned off.  Officer Thompson testified that he assumed
that the vehicle had a flat tire or had run out of gas, so he stopped his
marked patrol car behind the vehicle, which was impeding traffic and creating a
road hazard, to assist the driver.  He
activated his patrol car=s overhead lights and, as he
approached the vehicle, he saw that no one was in the car.  Officer Thompson testified that the driver=s window
was down and that he Asmell[ed] a strong [odor] of
alcohol and marijuana coming from the car.@  He radioed his partner, Corporal Greg Petty,
to look for anyone on foot because he was concerned that the driver might be
intoxicated and might stumble into traffic.

Corporal Petty, in a separate patrol car, was
unable to find any pedestrians in the area. 
The two officers called a tow truck to remove the car.  Corporal Petty made the decision to remove
the Taurus from the roadway and to have it impounded.








Before the tow truck arrived, Officer Thompson
began inventorying the Taurus, which he testified is the department=s
standard procedure when impounding a vehicle. 
Inside the vehicle, he found a partially empty bottle of Mad Dog 20/20,
an alcoholic beverage; some marijuana in the cup holder; and the remnants of a
marijuana cigarette.  Officer Thompson
testified that, as soon as he opened the car=s trunk,
Aa strong
smell of marijuana . . . hit [him] in the face. 
It almost knocked [him] down it was so strong.@  He saw a white Wal-Mart sack in the trunk,
which contained approximately fifty clear plastic bags holding a green leafy
substance.  Officer Thompson determined
that they were Adime@ bags of
marijuana.[4]


Officer Thompson finished the inventory.  While he waited for the tow truck to finish,
he saw a red pick-up truck slow down and stop in the center turn lane beside
the Taurus.  He testified that he saw
Hyman sitting in the bed of the truck, wearing shorts and a T-shirt, which he
noted was unusual for a cold November night. 
Both officers testified that, as the truck came to a stop, Hyman, who
was holding a gas can, leaned out towards the driver=s side
window and motioned for the driver to keep going.  At the time, the tow truck was in front of
the Taurus and the two marked police vehicles with flashing lights were behind
it.

Hyman testified that the Good Samaritan did not
come to a stop.  He testified that she Apulled
over into, like, the middle lane because it=s the
corner right here where she was going to turn around, and I was like, >No.  Don=t stop
right here because there=s a lot of traffic,= and she
went up to the corner and turned.@








Officer Thompson testified that, because he
thought the situation was odd, he turned off his patrol car=s
overhead lights and followed the pick-up truck. 
The driver turned the pick-up truck onto the first available side
street.  He testified that the truck
stopped in the middle of the side street and that Hyman jumped out of the bed
of the truck, holding the gas can in one hand and a yet-to-be-identified object
in the other hand.[5]  

Officer Thompson testified that he activated his
overhead lights, and Hyman turned and faced the patrol car.  He testified that he drew his pistol, ordered
Hyman to lie down on the ground, and then handcuffed him.  Officer Thompson stated the purpose for
detaining Hyman was Ato further investigate if that
was his vehicle we were . . . impounding@ and to
determine if he was in possession of the marijuana inside the Taurus.  Hyman possessed the key to the Taurus and
admitted to driving the car when it ran out of gas.  Corporal Petty arrived and read Hyman his Miranda
rights.[6]  Officer Thompson arrested Hyman and
transported him to the Dalworthington Gardens Jail.  At the police station, Corporal Petty again
read Hyman=s rights to him, and Hyman
dictated and signed a written statement to the effect that he knowingly
possessed the marijuana.[7]








Hyman filed a pretrial motion to suppress the
marijuana and the written statement.  He
alleged that Corporal Petty told him that the case would be filed as a
misdemeanor punishable by up to ninety days=
imprisonment if he signed the statement, but that it would be filed as a felony
punishable by up to fifteen years in prison if he refused.  At the suppression hearing, Corporal Petty
denied having made any threat or promise regarding what type of charges would
be made against Hyman and testified that he did not know what offenses Hyman
would be charged with at the time Hyman signed the statement because he did not
know the exact quantity of marijuana that Hyman had in the car.  The trial court denied the motion to suppress.

When the State offered the marijuana, the lab
technician=s stipulated testimony about the
marijuana, and the written statement into evidence during trial, Hyman=s
counsel responded, Awithout objection,@ to each
item.  The jury found Hyman guilty and
assessed punishment at six years=
confinement.  This appeal followed.

III. Motion to Suppress








In his first issue, Hyman complains that the
trial court erred by denying the motion to suppress with regard to the
marijuana and lab results Abecause
the police performed an investigative detention of [him] without reasonable
suspicion that [he] had broken the law.@

A. Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).  When, as here,
the record is silent on the reasons for the trial court=s
ruling, or when there are no explicit fact findings and neither party timely
requested findings and conclusions from the trial court, we imply the necessary
fact findings that would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Id.
at 819.  We then review the trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Id.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004); Ross,
32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  








Furthermore, it is well-settled that when a
pretrial motion to suppress evidence is overruled, the accused need not
subsequently object to the admission of the same evidence at trial to preserve
error.  Moraguez v. State, 701
S.W.2d 902, 904 (Tex. Crim. App. 1986). 
However, when the accused affirmatively accepts previously challenged
evidence by stating that he has no objection when the evidence is offered at
trial, any error is waived.  Swain v.
State, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005), cert. denied, 127
S. Ct. 145 (2006); Moraguez, 701 S.W.2d at 904; Jones v. State,
962 S.W.2d 158, 167 (Tex. App.CFort
Worth 1998, no pet.). 

B. Analysis

The trial court denied Hyman=s motion
to suppress and proceeded with the trial. 
When the State sought to admit the marijuana and the stipulated-to lab
report into evidence at trial, Hyman=s
counsel replied, Awithout objection.@ Hyman
argues that only the exact phrase, Ano
objection,@ waives the error.  We find his argument unpersuasive because
only an affirmative acceptance is required to waive the error.  See Brown v. State, 183 S.W.3d 728,
741 (Tex. App.CHouston [1st Dist.] 2005, pet.
ref=d). 








Additionally, even if Hyman had properly
preserved error, the trial court did not err by denying his motion to
suppress.  A[I]nventories
pursuant to standard police procedures are reasonable@ under
the Fourth Amendment.  South Dakota v.
Opperman, 428 U.S. 364, 372, 376, 96 S. Ct. 3092, 3098_100 (1976); see also
Benavides v. State, 600 S.W.2d 809, 810, 812 (Tex. Crim. App. 1980)
(requiring a lawful impoundment for a lawful inventory search and stating that
such a seizure is authorized when there is evidence Athat the
car was impeding the flow of traffic or that it was a danger to public safety.@).  The purpose of an inventory search is to
protect the owner=s property while it is in police
custody, to protect the police against claims or disputes over lost or stolen
property, and to protect the police from potential dangers.  Kelley v. State, 677 S.W.2d 34, 37
(Tex. Crim. App. 1984); Dart v. State, 798 S.W.2d 379, 380 (Tex. App.CFort
Worth 1990, pet. ref=d); see also Robertson v.
State, 541 S.W.2d 608, 611 (Tex. Crim. App. 1976) (holding that, after the
vehicle=s
injured owner had been taken to the hospital, the police had the authority to
seize and conduct an inventory search of a wrecked vehicle before having it
removed from the street), cert. denied, 429 U.S. 1109 (1977).








Hyman does not challenge the validity of the
seizure and search of the Taurus. 
Instead, Hyman claims that the police detained him without
reasonable suspicion in violation of the Fourth Amendment, when Officer
Thompson ordered him to lie down and handcuffed him, such that the marijuana
should have been suppressed.  However,
contrary to the usual order of events, i.e., the seizure of a person followed
by the search and discovery of contraband in the person=s
vehicle, by the time that Officer Thompson detained Hyman, the officers had
already discovered the marijuana pursuant to their decision to impound and to
conduct an inventory search, the legitimacy of which Hyman does not question.[8]

At the suppression hearing, both officers
testified that it was their normal practice and procedure to inventory a
vehicle before having it towed.  When
asked why he inventoried the vehicle, Officer Thompson testified,

Well, I was going to tow it and have it impounded
because it was in the middle lane of traffic and a hazard to other
motorists.  Upon doing that, we inventory
the vehicles to make sure and jot down and write any valuables that are in the
car in case later down the road when the owner of the vehicle picks it up if
they can sayCyou know, if they come back and
say, well, there was a CD player in there, but now [there=s]
not.  We canCWe have,
you know, a list of everything that was in that vehicle when it was in our
possession.

See Kelley, 677 S.W.2d at 37; Dart, 798 S.W.2d at
380; Robertson, 541 S.W.2d at 610_11.  Corporal Petty testified that the Taurus was
abandoned in the roadway, obstructing traffic. 
See Benavides, 600 S.W.2d at 811_12.  








The trial court, as sole trier of fact and judge
of the witnesses= credibility during the
suppression hearing, could have reasonably chosen to credit the officers=
testimony about their decision to inventory the apparently abandoned vehicle
and their subsequent discovery of marijuana. 
See Ross, 32 S.W.3d at 855. 
And the totality of the circumstances occurring after the discovery of
the marijuana, as described by the officers and contradicted by HymanCHyman=s
appearance in the back of a truck that slowed or stopped near the defunct, marijuana-filled
Taurus, his gas can, and his encouragement to the driver to bypass the Taurus
upon viewing the two marked police vehiclesCcould
have given the officers a reasonable suspicion that Hyman was somehow connected
to the Taurus sufficient to detain him to investigate.  See Terry v. Ohio, 392 U.S. 1,
21B22, 88
S. Ct. 1868, 1880 (1968); Garcia v. State, 43 S.W.3d 527, 530 (Tex.
Crim. App. 2001).  Therefore, the trial
court did not err by denying Hyman=s motion
to suppress, and we overrule his first issue.

IV. Ineffective
Assistance of Counsel

 

In his second and third issues, Hyman contends
that his trial counsel=s assistance was ineffective
because he stated, Awithout objection,@ each
time the State sought to introduce the marijuana, the lab report, and the
written confession into evidence.

A. Standard of Review








To establish ineffective assistance of counsel,
an appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62_63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).









In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688_89, 104 S. Ct. at
2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813_14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id., (quoting Thompson, 9
S.W.3d at 813).  It is not appropriate
for an appellate court to simply infer ineffective assistance based upon
unclear portions of the record.  Mata
v. State, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
the appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id., 104 S. Ct. at 2068.  The ultimate focus of our inquiry must be on
the fundamental fairness of the proceeding whose result is being
challenged.  Id. at 697, 104 S.
Ct. at 2070.

B. Analysis

Hyman argues that his counsel=s trial
strategy Awas to suppress the marijuana
found in the abandoned vehicle@ and the
written statement, as shown by his filing a motion to suppress.  Hyman claims that his counsel=s
affirmative acceptance of the marijuana, the lab report, and the written
statement undermined his trial strategy and so was objectively unreasonable.








We have already concluded that the trial court
did not err by denying Hyman=s motion
to suppressCa question of the admissibility
of evidenceCsuch that any subsequent alleged
professional errors by Hyman=s trial
counsel with regard to that evidence was harmless.  See Holmes v. State, 248 S.W.3d 194,
196 (Tex. Crim. App. 2008).  That is, had
Hyman=s trial
counsel objected to the admission of the evidence at trial, based on the trial
court=s
previous denial of the motion to suppress, his objection would have been
overruled, and the evidence would have still been presented.

However, even assuming that Hyman met the first Strickland
prong, he has failed to meet the second by showing a reasonable probability
that, but for the alleged unprofessional errors by counsel, the result of the
proceeding would have been different.  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Lemons v. State,
135 S.W.3d 878, 883 (Tex. App.CHouston
[1st Dist.] 2004, no pet.); see also Holmes, 248 S.W.3d at 196 (holding
that a defendant who affirmatively states, ANo
objection,@ when evidence is offered may
still request and receive a jury instruction under Article 38.23 if the
evidence raises a contested factual issue that is material to the lawfulness of
obtaining the evidence). 

The trial court=s jury
charge included an instruction under article 38.23, stating:








You are instructed that Texas law provides that no evidence obtained
by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of America, shall be admitted in evidence against the accused
on the trial of any criminal case.

 

The jury is, therefore, instructed that if it believes, or has a
reasonable doubt, that evidence was obtained in violation of the provisions of
this law, then in such event the jury shall disregard any such evidence so
obtained.

 

You are instructed that under our law a statement of a Defendant made
while under arrest or in custody, may not be used in evidence against the
defendant unless it appears that the statement was freely and voluntarily made
without compulsion or persuasion.

 

Now, therefore, if you find from the evidence, or if you have a
reasonable doubt thereof, that at the time of the making of the statement, if
any, to Corporal Petty, the Defendant was induced by persuasion to make said
statement, if any, by Corporal Petty telling and promising the Defendant that
if he made a statement in regards to the marihuana, that Corporal Petty would
make sure that the charged offense was filed as a misdemeanor, then you will
completely disregard such statement as evidence for any purpose and you will
not consider any evidence obtained as a result thereof. 

 

See Tex. Code Crim. Proc.
Ann. art. 38.23(a) (Vernon 2005). 








The record reflects that not only did the jury
hear near-identical testimony as that given during the suppression hearing,[9]
but also that it thoroughly considered the matter as instructed to do so by the
trial court.  Of the eleven jury notes
submitted to the trial court during deliberations, several addressed matters
pertinent to the issues of reasonable suspicion and possible coercion:

Jury Note #1: What are
the cross streets surrounding the area where the car was stopped on Bowen?  Where on [the] 2600th block?  What is the distance from Walmart to where
the car was stopped?[10]

 

Jury Note #2: We, the jury, disagree as to the
amount of times on the police reports, the amount of 2 oz to 4 oz of marihuana
was used as opposed to 4 oz to 2 lbs (or 5 lbs as the law would dictate).  We question this in reference to the
possibility there was potential coercion in obtaining the statement of Mr.
Vassa Hyman. 

Jury Note #4: One of the
jurors states that Mr. Hyman had purchased the gas can at the neighborhood
Walmart.  Another juror states he had the
gas can with him.  Did Mr. Hyman in fact
state he purchased the gas can at the Walmart[?]  This evidence goes to the credibility of Mr.
Hyman=s testimony.

 

Jury Note #5: One juror
understands that the hand writing on the thumb print card, as completed by the
police dept personnel, indicated the [amount] of marihuana to be 2 oz to 4
oz.  Another juror believes that piece of
information was objected to, sustained, and is not in evidence.  Is this part of the testimony, and was the
amount of 2-4 oz handwritten in the card?

 








Jury Note #7: We the
jurors would like to hear the testimony of both Jennifer Smith [jailer] and
Corporal Petty regarding where the A2 to 4 oz of marihuana@ was entered on the
reports.  Jurors disagree in the
testimony as to where this information is contained and whether this was
testified to as a computer generated, populated area or hand written.

 

Jury Note #10: Your
[H]onor, we would like to review Mr. Hyman=s statement as entered into evidence.  A juror is debating its content as to how Mr.
Hyman came into possess[ion of] the marihuana, and which portion he advised the
court were lies.

 

Based on our conclusion that the trial court did
not err by denying Hyman=s motion to suppress, and the
inclusion in the jury charge of an instruction pursuant to article 38.23Cpresenting
a question of disputed fact for the jury=s
consideration and resolution with regard to the written statementCthe
trial=s
outcome would have been the same, with or without the objection of counsel to
the admissibility of the evidence at trial. 
See Holmes, 248 S.W.3d at 196. 
Hyman has failed to show that there is a reasonable probability that,
but for his trial counsel=s alleged unprofessional errors,
the jury would not have convicted him, or that the trial=s result
was in any way unreliable.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068. 
Therefore, we overrule Hyman=s second
and third issues. 

 

 

 

 








V. Conclusion

Having overruled Hyman=s three
issues, we affirm the judgment of the trial court.

PER CURIAM

 

PANEL:  MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: August 7, 2008











[1]See Tex. R. App. P. 47.4.





[2]See Tex.
Health & Safety Code Ann. ' 481.121(a) &
(b)(3) (Vernon 2008).





[3]That portion of Bowen
Road, in Dalworthington Gardens, has four lanes, two northbound and two
southbound, separated by a center turn lane, and no shoulder.





[4] A Adime bag@ is a packaged amount of
marijuana that sells for $10 on the street.





[5]Officer Thompson
testified that the object turned out to be a handful of cash in the amount of
$492.





[6]See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966).  





[7]The pertinent portion
states, A[A] Hispanic male driving
a [T]hunder bird pulled beside me.  He
gave me a bag of weed to sell for him. 
He told me to bring him back $350 dollars or something.@  The rest of the statement detailed his
problems with his girlfriend and the Taurus running out of gas.





[8]And there is no seizure
under the Fourth Amendment when police take possession of property abandoned
independent of police misconduct.  See
McDuff v. State, 939 S.W.2d 607, 616 (Tex. Crim. App.), cert. denied,
522 U.S. 844 (1997). 





[9]Corporal Petty testified
that he did not make any promises or threats to Hyman to obtain the written
statement.  Hyman testified that he
understood, from his conversation with Corporal Petty, that if he made the
statement, that it would be a misdemeanor that he would Amost likely, do just 90
days.@





[10]The trial court responded
more than once by instructing the jury on the law with regard to answering jury
notes, i.e., that the jury must say that there is a disagreement on a specific
point of testimony and must state the specific point upon which there was
disagreement.