Opinion issued April 28, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-09-00983-CR, 01-11-00271-CR,
01-11-00272-CR

———————————

MARCUS STEPHEN FLECK, Appellant

V.

THE State of
Texas, Appellee



 



 

On Appeal from the 176th District Court

Harris County, Texas



Trial Court Case No. 1228225 (Counts I, II, and III)

 



 

MEMORANDUM OPINION

Appellant, Marcus Stephen Fleck, appeals three judgments finding him
guilty on three counts[1] of aggravated sexual
assault for intentionally or knowingly causing his mouth to contact the sexual
organ of the complainant, a child under 14 years of age.  See
Tex. Penal Code Ann. § 22.021(a)(B)(iii) (West Supp. 2010).  Pursuant to a plea-bargain agreement, the
trial court assessed appellant’s sentence on each count at 40-years’
confinement in the Texas Department of Criminal Justice to run concurrently in
each of the three counts.  In
three issues, appellant contends that due to prosecutorial vindictiveness, he
was reindicted, which resulted in two additional counts of aggravated sexual
assault; that the trial court abused its discretion by not granting a mistrial after
the State introduced evidence of an extraneous murder threat; and that a new
punishment hearing should be ordered because the trial court did not consider
or evaluate mitigating circumstances.  We
conclude that the assertion that the reindictment was the result of
prosecutorial vindictiveness is not preserved for appeal, that the trial court
was within its discretion not to order a mistrial after it instructed the jury
to disregard the extraneous threat, and that appellant did not preserve for
appeal any punishment-phase error because he entered into a plea-bargain
agreement concerning punishment.  We
affirm.

Background

          In
December 2002, appellant and his then-wife resided together with their two
daughters:  the complainant, who was 11
years old, and her three-year-old sister. 
Appellant was the primary caretaker of the children because the
complainant’s mother attended nursing school. 
On at least six occasions between Christmas and the end of March 2003, appellant
had or attempted to have sexual contact with the complainant.  During the same time, appellant also
physically abused the complainant and her mother. 

          The
first incident of sexual abuse began one day in their living room.  Appellant engaged the complainant in a game of
“tickle monster,” in which he would move his index finger up and down while
saying, “[O]h, the tickle monster’s going to come and get you.”  When the complainant began ascending the
stairs, however, appellant grabbed her ankle. 
Appellant removed her pants and lowered her underwear to her
ankles.  While holding her legs up,
appellant bit her bottom and placed his mouth on her sexual organ for about 30 to
40 seconds.  She tried to escape but was
not strong enough to do so.  

          The
second incident began the same way, with appellant initiating a game of tickle
monster.  Wanting to avoid the same
result, the complaint ran away a little bit faster, but appellant grabbed her and
again engaged in the same conduct on her sexual organ after removing her pants
and underwear.

          At
a later point, appellant and the complainant were sitting outside when
appellant told her not to tell her mother because she would be mad and jealous.

          The
third incident occurred in the hallway upstairs.  Appellant and the complainant were playing
around when he pulled her to the floor. 
Appellant removed her pants and underwear, held her legs up, and placed
his mouth on her sexual organ for about 30 to 40 seconds.

          The
fourth incident occurred in the complainant’s bedroom.  Soon after stepping out of the shower, the
complainant sat on her bed in a shirt and underwear.  Appellant entered her room and knelt in front
of her.  As he started to pull her
underwear down, the complainant looked at her father and said, “[D]ad,
no.”  Appellant stood up and cussed at
her.  As he left, he slammed the door
behind him.

          The
fifth incident occurred near the entrance to the complainant’s parents’ bedroom.  Needing money to buy some milk from the local
store, the complainant approached her parents’ bedroom door and asked appellant
for three dollars.  Appellant told her to
approach and lie down on the bed with him. 
The complainant said, “[N]o.”  Patting
the bed, appellant reiterated, saying, “[C]ome lay [sic] down with me[.]”  She refused. 
Appellant asked why.  She said,
“[B]ecause I know what you’re going to do.” 
The complainant turned to leave, but appellant told her to come to
him.  Standing in the doorway, the
complainant turned back around and started crying.  He yet again told her to come and lie down
with him.  She refused again and left.

          The
sixth incident occurred one night downstairs on the couch in front of the TV.  While her mother slept upstairs, the
complainant, dressed in her pajamas, and appellant sat on the couch, watching
TV together.  Appellant moved towards her
and had her lie down on the couch.  He
pulled her pajama pants and underwear off. 
While holding her legs up, appellant licked and sucked her sexual organ
for about 30 to 40 seconds.

          On
March 26, the complainant was playing in the yard with her sister when the
complainant accidently stepped on her sister’s foot with a pair of stilts.  Appellant approached and with the palm of his
hand, hit the complainant on her forehead twice.  The complainant blacked out for a couple of seconds
yet remained conscious.  That evening, when
the complainant’s mother returned home, the complainant told her mother about
the battery.

          The
next day, the complainant’s mother picked up the complainant from school early
and drove her to the police station. 
There, the complainant gave a statement concerning the battery, and the
police photographed the complainant’s forehead. 
During her statement, the complainant did not mention any of the sexual
abuse or attempts.  The complainant, her
sister, and her mother never returned to live with appellant.

          In
May, appellant filed for divorce.  In
early June, while her mother was driving the complainant home, the complainant
felt safe, and she told her mother about the incidents.  Her mother took her to a Child Assessment
Center, where the complainant told a forensic interviewer about one instance that
appellant sexually molested her.

          In
September, the Harris County Grand Jury indicted appellant on one count of aggravated
sexual assault for intentionally or knowingly causing his mouth to contact the
sexual organ of the complainant, a child under 14 years of age, on or about
February 15, 2003.[2]  At the first trial, the State introduced the
complainant’s testimony concerning the four incidents of sexual molestation and
the instance of attempted sexual molestation that occurred in the complainant’s
bedroom shortly after she exited the shower.[3]  After the close of all evidence, appellant
asked the trial court to require the State to elect the act upon which it would
rely for conviction.[4]  The trial court denied the request.[5]  A jury found appellant guilty for the single
count for aggravated sexual assault of a child and assessed his sentence at 25
years imprisonment.[6]  On appeal, the Fourteenth Court of Appeals
reversed appellant’s conviction because it could not conclude beyond a
reasonable doubt that the verdict had been unanimous as to any single incident
of sexual molestation.[7]  The appellate court remanded for a new trial.[8]

          In
July 2009, the trial court held the first pretrial motion hearing on remand.  Appellant and his trial counsel attended the
hearing.  The court began by announcing
that the trial date had been reset. 
Appellant personally addressed the court, objecting to the trial date
reset.  Without ruling on appellant’s
objection, the court explained to appellant:

[Y]ou have a lawyer who I
will entertain any motions filed and presented by her, but I’m not going to
entertain any pro se motions or writs filed by you because you are represented
by counsel okay.

 

Later in the hearing, appellant’s trial
counsel informed the court that she had learned that the State was seeking to
reindict appellant.  Appellant again
personally addressed the court:

The State has had over
six years to file new charges, and I object to . . . the new charges
on the basis of prosecutorial vindictiveness as a direct result of my refusal,
not only having won my appeal, but also having filed my federal habeas corpus
in these proceedings.

 

Without acknowledging the appellant or
addressing his personal objection, the trial court proceeded with the hearing.  Appellant’s trial counsel neither adopted
this objection nor addressed any argument concerning the prosecutorial-vindictiveness
claim.

          In
August, the trial court held a second pretrial motion hearing.  Appellant personally addressed the court,
informing it that he had two hand-written motions he wished to file.  Appellant’s trial counsel informed the court
that she was not going to adopt his motions. 
Explaining that it “would not expect [her] to adopt his motions[,]” the
trial court announced it would “only consider the motions filed through
counsel.”  After appellant persisted, the
trial court explained, “I’m not going to consider any pro se motions that you
file.  They will not be considered.  You have no right to hybrid representation.”  Later on, the trial court asked appellant if
he understood that the State would be seeking to reindict his case and add new counts.  Appellant reiterated his objection on the
ground of prosecutorial vindictiveness. 
The trial court explained to appellant:

Just so the record is
clear, this re-indictment did not occur until at your request to change we
changed prosecuting counsel, okay.  That
happened at your request.  You’re right,
the [prosecuting] office that we had before, they didn’t re-indict you.  That’s entirely within their right to do.

 

          The
next week, the Harris County Grand Jury indicted appellant on three counts of aggravated
sexual assault for intentionally or knowingly causing his mouth to contact the
sexual organ of the complainant, a child under 14 years of age
on or about January 1, 2003; on or about February 1, 2003; and on or about
March 1, 2003.  Before trial, appellant
elected to have the trial court judge assess his punishment in the event of a
conviction.  

          During
the guilt-innocence phase, the complainant’s mother testified that around
Christmas 2002, she discovered in the laundry a pair of underwear belonging to
a woman who was having an affair with appellant.  The complainant’s mother confronted appellant
with the underwear.  Initially, appellant
said the underwear belonged to the complainant, and he left the house.  After a few minutes, he returned and locked
the door behind him.  Appellant screamed
at the complainant’s mother.  He threw
her around and pulled her hair, ripping out patches of hair.  Appellant went into the kitchen, where he got
some concentrated lemon juice.  Appellant
drank some of the juice and then spat it on her head, causing her scalp to
burn.  The complainant’s mother testified
that appellant had many affairs and had physically attacked her on multiple
occasions.  The State asked why she did
not leave appellant because of the affairs.  The complainant’s mother explained, “I did not
want to confront [appellant] because it would be bad, it would be bad for me.  He would hurt me.”  The State then asked, “[I]s that basically
the same reason why you didn’t leave, because of the abuse?”  The complainant’s mother answered, “I was
terrified.  He told me he would cut me up
in pieces.”  Appellant’s trial counsel
objected on the ground that the complainant’s mother’s statement was evidence
of an extraneous offense, namely, a “terroristic threat.”[9]  The trial court sustained the objection and
instructed the jury to disregard. 
Appellant’s trial counsel moved for a mistrial, which the trial court
denied.

          The
jury found appellant guilty for all three counts of aggravated sexual
assault.  At the opening of the
punishment phase, the trial court announced its understanding that the parties
had reached an agreement as to the punishment in this case.  The State and appellant confirmed that they
had agreed to a sentence of 40-years’ confinement in the Texas Department of
Criminal Justice to run concurrently in each of the three counts.  The court expressed its understanding that
the agreement did not waive appellant’s right to appeal the proceedings at the
guilt-innocence phase but that there would be no appeal of the punishment
phase.  In accordance with the agreement,
the trial court assessed appellant’s sentence at 40-years’ confinement for each
count with each sentence to run concurrently.

Reindictment

          In
his first issue, appellant asserts that his reindictment,
resulting in the two additional counts of aggravated sexual assault, was the
result of prosecutorial vindictiveness over his having successfully obtained a
reversal and remand for new trial on appeal of his earlier conviction regarding
his sexual abuse of the complainant.  Appellant
contends that he is entitled to reversal and rendition of acquittal on counts
two and three.  Concerning the count one,
appellant contends that he is entitled to a reversal and remand for new trial
because he was deprived of the protection afforded by extraneous offense
instructions that would have been given concerning the facts underlying counts
two and three.

          “[A]
decision to prosecute violates due process when criminal charges are brought in
retaliation for the defendant’s exercise of his legal rights.”  Neal v.
State, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004).  “[U]nder specific, limited circumstances, the
[default] presumption that a prosecution is undertaken in good faith gives way to
either a rebuttable presumption of prosecutorial vindictiveness or proof of
actual vindictiveness.”  Id.  Nevertheless, a defendant waives on appeal a
claim that his reindictment was the result of prosecutorial vindictiveness if
he fails to make that claim to the trial court by a timely request, objection,
or motion on which the court ruled or refused to rule.  Id.;
see Tex.
R. App. P. 33.1(a)(1)–(2).

          On
appeal, appellant asserts that he properly raised the issue of prosecutorial
vindictiveness to the trial court by personally objecting at the pretrial
motion hearing.  However, at the time
appellant urged his pro se objection, he was represented by his trial counsel.  A pro se objection made by a defendant
represented by counsel has legal effect if (1) the objection is adopted by
counsel, (2) the trial court permits a hybrid representation situation, either
as to the particular objection or in general, or (3) the trial court denies the
pro se objection on the merits.  See Robinson v. State, 240 S.W.3d 919, 921–22
(Tex. Crim. App. 2007).  Additionally, a
defendant has no right to hybrid representation.  Id.  Here, appellant’s trial counsel never
adopted appellant’s objection, and the trial court expressly refused to permit
a hybrid representation situation and never considered the merits of
appellant’s objection or ruled on the merits of the objection.  We conclude that appellant’s pro se objection
is without legal effect.  See id.  We hold that the appellate assertion that the
reindictment was the result of prosecutorial vindictiveness is not preserved
for appeal because appellant’s trial counsel did not present the complaint to
the trial court and appellant’s pro se assertion was legally ineffective.  See
Neal,
150 S.W.3d at 173; Tex. R. App. P. 33.1(a)(1)–(2).

          We
overrule appellant’s first issue.

Motion for Mistrial

          In
his second issue, appellant contends that the trial court abused
its discretion by not granting a mistrial after sustaining his objection to the
complainant’s mother’s testimony that appellant had threatened to cut her to
pieces.

A.              
Standard of Review

We review the denial of a motion
for mistrial under an abuse-of-discretion standard.  Hawkins
v. State, 135 S.W.3d 72, 76–77 (Tex. Crim.
App. 2004); Davis v. State, 177
S.W.3d 355, 363 (Tex. App.—Houston
[1st Dist.] 2005, no pet.).  Under this
standard, an appellate court must uphold the trial court’s ruling as long as
the ruling is within the zone of reasonable disagreement.  Wead v.
State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  “A mistrial is a device used to halt trial proceedings
when error is so prejudicial that expenditure of further time and expense would
be wasteful and futile.”  Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim.
App. 2000) (quoting Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999)).  It is appropriate only for “a narrow class of
highly prejudicial and incurable errors.”  Id.;
see also Hawkins, 135 S.W.3d
at 77.  Thus, a trial court properly
exercises its discretion to declare a mistrial when, due to the error, an
impartial verdict cannot be reached or a conviction would have to be reversed
on appeal due to “an obvious procedural error.”  Wood,
18 S.W.3d at 648.

Where, as here, the trial court
sustains an objection and instructs the jury to disregard but denies a
defendant’s motion for a mistrial, the issue is whether the trial court abused
its discretion in denying a mistrial.  Hawkins, 135 S.W.3d at 77.  In determining whether the trial court abused
its discretion in denying the mistrial, we balance three factors:  (1) the severity of the misconduct (prejudicial
effect), (2) curative measures, and (3) the certainty of conviction absent the
misconduct.  Id. at 75.  

Generally, an appellate court
presumes the jury complies with a prompt instruction to disregard.  Wesbrook
v. State, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000).  Accordingly, an error “in the admission of
improper testimony is usually cured by the trial court’s instruction to the
jury to disregard[.]”  Coe v. State, 683 S.W.2d 431, 436 (Tex.
Crim. App. 1984).  Only in extreme
circumstances, where it appears that the question or evidence is
clearly calculated to inflame the minds of the jury and is of such character as
to suggest the impossibility of withdrawing the impression produced on the
jurors’ minds, will a mistrial be required.  Kelley v.
State, 677 S.W.2d 34, 36 (Tex. Crim. App. 1984).  

          B.      Analysis

          Because
the trial court promptly instructed the jury to disregard the complainant’s
mother’s testimony that he threatened to cut her up into pieces, we begin with
the presumption that any error was cured. 
See id.  

          Appellant
asserts that the State’s question invited the complainant’s mother’s
response.  We disagree.  Immediately before the State’s question, the
complainant’s mother’s testified, “I did not want to confront [appellant concerning
his affairs] because it would be bad, it would be bad for me.  He would hurt me.”  The State then asked, “And is that basically
the same reason why you didn’t leave, because of the abuse?”  The State’s question concerns the
complainant’s mother’s testimony that she had been the victim of physical
abuse, not verbal threats.  As the trial
court recognized, the complainant’s mother’s answer is non-responsive.  Accordingly, it does not appear that the
State’s question was calculated to inflame the minds of the jury.  See
Rojas v. State, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) (“A witness’s
inadvertent reference to an extraneous offense is generally cured by a prompt
instruction to disregard.”).

          Appellant
contends that he was harmed by the complainant’s mother’s testimony of the
threat because it left the jury with the impression that he was a man too
dangerous to leave on the streets.  Although,
as appellant suggests, the evidence of the threat may have implied that
appellant was dangerous, other evidence makes this point explicit.  Immediately before learning of the mere
threat of violence, the jury heard the complainant’s mother detail how
appellant swung her around by her hair, removing entire patches of hair.  The complainant’s mother testified that physical
assaults such as this were not isolated incidents.  The jury also heard testimony from the
complainant that appellant had physically abused her on multiple occasions.  In light of the other evidence, we cannot say
the testimony of a verbal threat, even one involving death, was so prejudicial
that the expenditure of further time and expense would be wasteful and futile.  See
Marshall v. State, 210 S.W.3d 618, 628–29 (Tex. Crim. App. 2006) (mistrial
not required despite introduction of evidence of extraneous offense where trial
court granted motion to disregard and jury heard other, unobjected-to evidence
of similar offense).   

          In sexual
abuse cases, the testimony of the child victim alone is sufficient to support
the conviction.  See Tex. Code Crim. Proc.
Ann. Art. 38.07 (West
2005); Tran v. State, 221 S.W.3d 79,
88 (Tex. App.— Houston [14th Dist.] 2005,
pet. ref’d); Sansom v. State, 292
S.W.3d 112, 123 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).  Here, the complainant’s testimony recited all
the elements required for aggravated sexual assault.  She was able to recount specific details of
the sexual assaults, such as the location of each incident, the placement of
appellant’s hands, and comments appellant made to her.  Appellant offered no evidence contrary to the
complainant’s testimony.  The evidence
shows a high certainty of conviction absent the testimony of the verbal threat
of violence against the complainant’s mother. 
We also note that the trial court’s instructions told the jury, “[I]f
there is any evidence before you in this case regarding the defendant’s
committing an alleged offense or offense other than the offenses alleged
against him in the indictment in this case, you cannot consider such evidence
for any purpose unless you find and believe beyond a reasonable doubt that the
defendant committed such other offense or offenses, if any, and even then you
may only consider the same in determining the motive, opportunity, intent,
preparation, plan, knowledge, indemnity, or absence of mistake or accident of
the defendant, if any, in connection with the offenses, if any, alleged against
him in the indictment and for no other purpose.” 

          After
balancing all of the factors, we hold that the trial court did not abuse its
discretion in overruling appellant’s motion for mistrial.  

          We overrule
appellant’s second issue.

Punishment Hearing

          In
his third issue, appellant contends that a new punishment
hearing should be ordered because the trial court did not consider or evaluate
evidence of mitigating circumstances. 
Appellant recognizes that by agreeing to a 40-year sentence, he waived
his right to raise issues on appeal concerning the punishment phase of
trial.  Appellant asks that we should nevertheless
set aside his waiver because at his 2009 trial, he and his trial counsel could
not have known of the Supreme Court’s decision in Graham v. Florida, --- U.S. ---, 130 S. Ct. 2011 (2010).  Appellant contends that in light of Graham, it is no longer futile to argue
that the Eighth Amendment entitles a defendant to an individualized
determination of the propriety of punishment, including a mechanism for having
mitigating evidence considered.

          Appellant
surmises on appeal that he may not have entered into an agreed plea bargain for
confinement of 40 years concurrent for three counts of aggravated sexual
assault had he known he could introduce mitigating evidence; however, the law
at the time of his trial permitted that type of evidence.  Article 37.07, section 3(a)(1) of the Texas
Code of Criminal Procedure states that “evidence may be offered by the state
and the defendant as to any matter the court deems relevant to sentencing
. . . .”  Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1)
(West Supp. 2010).  Furthermore, a
defendant sentenced by the court may request the preparation of a presentence
investigation report that may include the “social history of the defendant, and
any other information relating to the defendant . . . .”  Tex.
Code Crim. Proc. Ann. art. 42.12 § 9(a) (West Supp. 2010).

          The
case referred to by appellant, Graham v.
Florida, concerned a juvenile defendant who violated his probation by
committing a home invasion robbery, by possessing a firearm, and by associating
with persons engaged in criminal activity. 
Graham, 130 S. Ct. at 2019.  The trial court held a sentencing hearing and
considered a punishment range of five years confinement to life without parole.  Id.  At the hearing, a presentence report prepared
by the Florida Department of Corrections recommended a departure sentence of
four years.  Id.  The trial court also
considered a letter written by Graham expressing remorse and promising to
refrain from crime.  Id. at 2020.  In announcing
its sentencing, the trial court noted that Graham had a strong family structure
to support him.  Id.  The trial court
sentenced Graham to life imprisonment without parole.  Id.  The Supreme Court held that with respect to a
juvenile offender who did not commit homicide, the Eighth Amendment prohibits
imposition of sentence of life without parole and requires that a state give
some meaningful opportunity to obtain release based on demonstrated maturity
and rehabilitation.  Id. at 2030.  “[T]he [Graham] Court was not required to
revisit the question of whether the Eighth Amendment mandates individualized
consideration for a term of years sentence. 
Therefore, discussion of a constitutional rule regarding mitigating
evidence is conspicuously absent from the decision . . . .”  Welch
v. State, --- S.W.3d ----, ----, No. 14-09-01020-CR, 2011 WL 80875, at *5
(Tex. App.—Houston [14th Dist.] Jan. 11, 2011, no pet.) (considering identical
argument).  

          Appellant
had a right, under state law, to present mitigating evidence and have a
presentence report filed.  See Tex.
Code Crim. Proc. Ann. arts. 37.07 § 3(a)(1), 42.12
§ 9(a).  Appellant has failed to show any
change in the law that would be pertinent to his decision to waive any
punishment issues.  Because
the record shows that appellant knowingly and intelligently waived his right to
challenge the punishment assessed against him, we conclude that appellant’s
waiver is effective.  See Tex.
Code Crim. Proc. Ann. art. 1.14 (West 2005).

          We
overrule appellant’s third issue.

­Conclusion

We affirm the judgments of the
trial court.

 


                                                          Elsa
Alcala

                                                          Justice


 

Panel consists of Chief Justice Radack and Justices Alcala and Bland.

 

Do
not publish.  See Tex. R. App. P. 47.2(b).











[1]           Initially,
all three counts were assigned to appellate cause number 01-09-00983-CR.  Subsequently, this Court re-assigned Count II
to appellate cause number 01-11-00271-CR and Count III to appellate cause
number 01-11-00272-CR.  Count I remains
assigned to appellate cause number 01-09-00983-CR.





[2]           Fleck v. State, 201 S.W.3d 268, 271
(Tex. App.—Houston [14th Dist.] 2006, no pet.).





[3]           Id. at 270.





[4]           Id. 





[5]           Id. 





[6]           Id.





[7]           Id. at 272.





[8]           Id.





[9]           See
Tex. Penal Code Ann. § 22.07 (West
2010).