**Opinion issued July 12, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-11-00621-CR**
**NO. 01-11-00622-CR**
**NO. 01-11-00623-CR**
**NO. 01-11-00624-CR**
**NO. 01-11-00625-CR**

———————————

**JOSE LUIS ORTA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case Nos. 62713, 62715, 63681, 63682, and 63683**

---

**MEMORANDUM OPINION**

A jury found Jose Luis Orta guilty of five felony offenses, consisting of one charge of evading arrest, one charge of assault of a public servant, and three charges of failure to appear. Orta stipulated to the truth of various enhancement paragraphs, and the jury assessed punishment at ten years' imprisonment and a $2,000 fine for evading arrest, a $500 fine for assault of the public servant, and two years' imprisonment and a $500 fine for each of the three failure-to-appear offenses. On appeal, Orta contends that the trial court erred in denying his motion for mistrial. He also challenges the sufficiency of the evidence supporting his conviction for one charge of failure to appear, arising out of his failure to appear at his November 15, 2010 court setting. Finding no error, we affirm.

### Background

Sergeant R. Arriaga, of the Manvel Police Department, accompanied by Officer-trainee J. Lovel, was on patrol one night in January 2010 when they pulled over a Jaguar because of a defective taillight. Orta was in the driver's seat and two passengers were also in the car. After checking the Jaguar, Sergeant Arriaga and Officer Lovel returned to their patrol car to run a check on Orta's driver's license. The check revealed that Orta had outstanding warrants, which provided sufficient reason to arrest him. The officers returned to the car to arrest Orta. Orta stepped out of the car as instructed but began to argue with Officer Lovel. When Officer Lovel stepped in to take Orta into custody, Orta squared off and tried to return to

2

the Jaguar.  Officer Lovel intercepted Orta, and the men began to struggle.  At that point, Sergeant Arriaga deployed his stun gun at Orta.  Orta flinched, but one of the prongs did not made contact with his chest, so the weapon failed to deliver a shock.  Orta ripped the other prong off and discarded the weapon.  Then, he ran back to the driver's side of his car, got in, and drove on Highway 6 toward Alvin at a high rate of speed.

Arriaga and Lovel returned to the patrol car and, with lights on and sirens blaring, pursued the Jaguar at speeds approaching 120 miles per hour.  With the assistance of both the Brazoria County Sheriff's Department and the Alvin Police Department, they located the Jaguar, but, by the time they reached it, it was unoccupied.  They searched the nearby area, but were unable to locate Orta or either of the passengers.

A few months later, in April 2010, Sergeant Arriaga again was on night patrol, this time with another trainee, Officer N. Peters.  The officers observed a truck parked in a church parking lot with its headlights facing Highway 6.  The officers drove up to the truck and asked if everything was O.K.  Sergeant Arriaga recognized Orta from the prior encounter and told Peters, "That's Jose Orta.  We have warrants on him."  Meanwhile, Orta, who apparently had also recognized Sergeant Arriaga, began to drive out of the parking lot.  Officer Peters turned on the patrol car's emergency lights and pulled the truck over.  As Officer Peters

3

approached the driver's side, Sergeant Arriaga headed for the passenger side of the truck to prevent Orta from accessing anything inside the car. Officer Peters escorted Orta to the back of the truck, and Sergeant Arriaga met them there. Orta tried to bolt, but the officers grabbed him and tried to restrain him, while ordering him to stop resisting arrest. Despite the officers' orders, Orta continued to resist. The officers attempted to place Orta in handcuffs, but he continued to fight with Officer Peters, pulling him to the ground. Eventually, Sergeant Arriaga was able to deploy his stun gun on Orta's back, but Orta continued to resist, even after two more deployments. The officers continued to urge Orta to stop resisting, but Orta showed no signs of slowing down, telling the officers, "Shoot me, you'll have to shoot me." After Orta began biting Officer Peters's arm, Sergeant Arriaga administered a fourth shock, which appeared to affect Orta more than the prior shocks. The officers again attempted to handcuff Orta, but Orta elbowed Sergeant Arriaga in the mouth, splitting the inside of his lip and causing it to bleed.

## I. *Denial of Motion for Mistrial*

Before trial, the defense moved to suppress evidence of Orta's prior arrests and outstanding arrest warrants during trial. The motion specifically addressed the videotape of the second traffic stop, which included a recorded discussion among the police officers in the patrol car about Orta's outstanding warrants. The State responded that it would mute the audio portion of the videotape during that

4

discussion, but contended evidence of outstanding warrants was necessary to prove that the officers were lawfully discharging their duty when they stopped Orta. With the parties' agreement, the Court ordered that the witnesses could refer to the fact that Orta had warrants without any further detail.

Orta moved for a mistrial during the State's questioning of Officer Peters. When the State asked Officer Peters why he ordered Orta to exit the vehicle, Peters responded, "I had already been informed that he had evaded police twice in a motor vehicle and that—I was afraid that if [Orta] stayed in the vehicle, that he would again try to evade in the motor vehicle." Defense counsel objected to this testimony on the basis that it violated the motion in limine, and the trial court sustained the objection. Defense counsel next asked that the testimony regarding the previous arrests be stricken from the record, and the trial court instructed the jury to disregard Officer Peters's testimony regarding any prior offense. After the instruction, defense counsel requested a mistrial, which the trial court denied.

### A. Standard of review

Orta complains that the trial court erred in denying his motion for mistrial. We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699–700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "A mistrial is a device used to

5

halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Thus, a trial court properly exercises its discretion to declare a mistrial when, due to the error, an impartial verdict cannot be reached or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648.

Where, as here, the trial court sustains an objection and instructs the jury to disregard but denies the defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying a mistrial. *Hawkins*, 135 S.W.3d at 77. In determining whether the trial court abused its discretion in denying the mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Id.* at 75. Only in extreme circumstances, where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds, will a mistrial be required. *Kelley v. State*, 677 S.W.2d 34, 36 (Tex. Crim. App. 1984).

6

### B.    *Analysis*

In considering the severity of the limine violation, we note that the State's question did not ask Peters to provide any details concerning the outstanding warrants; the question was reasonably framed to elicit enough information to justify the April 2010 traffic stop—that is, the existence of the outstanding warrants—without further elaboration. The single reference to Orta's two earlier attempts to evade arrest was brief, and the trial court promptly instructed the jury to disregard Peters's answer. Further, the trial court had consolidated one of the charged prior attempts to evade arrest in this same proceeding. The impression that Orta had been charged with two, rather than just one, attempts to evade arrest is not so inflammatory that the trial court's prompt instruction could not eliminate any prejudicial effect. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) ("A witness's inadvertent reference to an extraneous offense is generally cured by a prompt instruction to disregard."). We presume that the jurors follow the trial court's instructions. *See Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000); *Rojas*, 986 S.W.2d at 250; *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (jury presumed to follow instruction after accomplice witness alluded to defendant's previous incarceration). We hold that the trial court did not abuse its discretion in denying Orta's motion for mistrial.

## II. *Evidentiary sufficiency – failure to appear on November 15, 2010*

### A. *Standard of review*

Orta contends that the evidence is legally and factually insufficient to support his conviction on the charge of failure to appear at his November 15, 2010 court setting. We review legal and factual sufficiency challenges using the same standard of review. *See Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010)). Under this standard, the evidence is insufficient to support a conviction if, considering it in a light favorable to the verdict, no rational factfinder could have found the essential elements of the charged offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's evaluation of the credibility and weight of the evidence. *See Williams*, 235 S.W.3d at 750.

## B.     Failure to appear

A person commits the offense of failure to appear when the person lawfully released from custody "intentionally or knowingly fails to appear in accordance with the terms of his release." TEX. PENAL CODE ANN. § 38.10(a) (West 2011). The person may defend himself against the charge by showing that he had a reasonable excuse for his failure to appear. *Id.* § 38.10(c). Orta failed to appear for his trial setting on November 15, 2010. Orta claims that the State failed to present sufficient evidence to support the jury's determination that he "intentionally or knowingly" committed the offense. Orta complains that, at the time of his release, the instanter in his bond did not sufficiently notify him of the date on, and the court number in, which he was required to appear. Orta further claims that some evidence shows that he had a reasonable excuse.

"Generally, an instanter bond gives proper notice and, in the absence of evidence of a reasonable excuse, is sufficient to prove an appellant intentionally and knowingly failed to appear in accordance with the terms of his release." *Bell v. State*, 63 S.W.3d 529, 531 (Tex. App.—Texarkana 2001, pet. ref'd) (citing *Euziere v. State*, 648 S.W.2d 700, 702 (Tex. Crim. App. 1983)). Proof that the defendant was free pursuant to an instanter bond supplies a prima facie showing that the defendant had notice of the proceeding at which he failed to appear. *Richardson v. State*, 699 S.W.2d 235, 238 (Tex. App.—Austin 1985, pet. ref'd);

9

*see Bell*, 63 S.W.3d at 531. If some evidence shows that the defendant did not have proper notice of the scheduled proceeding, however, the prima facie case does not suffice; the State must do more than show the bond's terms to prove an intentional or knowing failure to appear. *Richardson*, 699 S.W.2d at 238; *see also Bell*, 63 S.W.3d at 531–32. For example, the State must prove that the defendant had actual notice of the proceeding or that he engaged in conduct designed to prevent him from receiving notice. *Richardson*, 699 S.W.2d at 238; *see Bell*, 63 S.W.3d at 532.

### C.    *Analysis*

Pertinent to the failure-to-appear offense, the State introduced testimony from Dale Foster, the Brazoria County Court Administrator, who maintains the felony criminal dockets for the county. Foster testified that, according to her docket sheets, Orta was set for trial in three cause numbers on November 15, 2010 in the 149th District Court, but, as noted on the bailiff's handwritten list of bond forfeitures, he failed to appear in court on that date. The State also elicited testimony from Adam Haynes, the bondsman who had written bonds on Orta's behalf. Haynes testified that he bonded Orta out of jail on November 10, 2010. Haynes recalled that he spoke with Orta about missing court on November 15, 2010, and Orta told Haynes that he "got his dates mixed up."

The State also examined Denise Templet of the Brazoria County District Clerk's office about Orta's failure to appear. Templet testified that she had been clerk of the 149th District Court in November 2010. Through Templet, the State admitted orders for the pretrial hearing and trial setting for Cause No. 62713, as well as orders addressing Cause Nos. 62714 and 62715. Each of these orders assigns a court date of November 15, 2010. Each contains a completed sheriff's return, which demonstrates that these documents were personally served on Orta while he was still in custody. Through Templet's testimony, the State also introduced documents showing that Orta's bond was forfeited on November 15, 2010.

Orta's evidentiary-insufficiency argument relies on bondsman Haynes's recollection of Orta's statement that he confused his dates. The jury, however, need not have credited that explanation or considered it to be a reasonable one. *See Williams*, 235 S.W.3d at 750. The jury was entitled to rely on the sheriff's returns as proof that Orta knew of the proper court date and intentionally failed to appear. In deference to the jury's evaluation of the credibility and weight of the evidence, we hold that the evidence is sufficient to support the jury's finding that Orta intentionally and knowingly failed to appear.

11

## Conclusion

We hold that the trial court did not abuse its discretion in denying Orta's motion for mistrial. We further hold that the evidence is sufficient to support the jury's finding that Orta knowingly and intentionally failed to appear at his November 15, 2010 trial setting. We therefore affirm.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).